## CAVENDER *v.* HEIRS' OF SMITH.

Section 13 of the act entitled "an act subjecting real and personal estate to execution," approved January 25, 1839, which provides that a bond executed to stay an execution, shall be taken as a judgment confessed, against the person or persons who executed the same, and against their estates, and that execution may issue thereon accordingly, is not void, for the reason that it denies or takes away, a trial in due course of law.

Where bail was entered in stay of execution, under the act of January 25, 1839, subjecting personal and real estate to execution, and the Clerk of the Court, at the time of taking and filing said stay bond, made no entry of judgment against the surety in the bond, nor was there ever any journal entry of judgment other than the one originally entered against the principal in the stay bond; and where after the expiration of the stay, execution issued against the principal and surety in the bond; *Held*, That the execution was valid against both the parties.

A certificate of acknowledgment of a deed, is good, though not in the language of the statute, provided the words used substantially comply with the object and meaning of the law.

Where a certificate of acknowledgment of a sheriff's deed, made under the statute of January 4, 1840, to regulate conveyances, stated that "J. H. M., sheriff of the county of D. aforesaid, to me personally known to be the same person described in, and whose name is subscribed to, the above instrument, appeared before me, and acknowledged that he executed the same as sheriff aforesaid;" *Held*, That it sufficiently appeared from the certificate, that the person who subscribed the deed, subscribed and acknowledged it "as a party thereto."

Title to real estate, acquired under a sale on execution, cannot be defeated by the issuing of a patent to the execution defendant, bearing date subsequent to the sale by the sheriff.

A government patent for land, relates back to the date of the purchase, and is evidence of title in the patentee from the date of the certificate of purchase, and not from the date of the patent only.

Where an execution defendant, subsequent to the sale of his real estate on execution, obtained a patent for the land so sold; and after the patent was so issued, a second execution was levied on the same land, under a junior judgment, prior in date to the patent, and the land was sold the second time; *Held*, That the purchaser under the first execution, obtained a good title; and that the patent conferred upon the execution defendant, no interest in the land, which could be reached by a subsequent judgment and sale.

Where in an action of right, the plaintiff, in support of his title, established the following facts:   That on the 17th of February, 1840 judg-

Cavender v. Heirs of Smith.

ment was rendered against S. under whom both parties claimed; that May 15, 1841, the premises were sold on execution to G.; that June 18, 1841, the sheriff executed to G. a deed, which was filed for record, August 18, 1841; that October 28, 1843, the sheriff made a second deed to G. for the same premises, which was filed for record on the same day; and that G. conveyed to the plaintiff, May 3, 1844, which deed was filed for record on the next day; and where the defendants offered to prove that, a judgment was rendered against S. in favor of one P. May 29, 1841; that an execution, issued on this judgment, dated June 19, 1845; that on the 16th of August, 1845, the same premises were sold under said execution, to one W.; that W. obtained a deed from the sheriff, November 24, 1849, which was filed for record, January 23, 1847; that December 10, 1846, a second execution issued on said judgment, under which, on the 25th of January, 1847, the interest of S. in the premises was again sold to W., who took a second deed, May 8, 1848, which was filed for record, May 12, 1848; and that W. and wife conveyed to one of the defendants, on the 22d of March, 1852, which evidence was objected to by the plaintiff, and excluded from the jury, by the court; *Held*, That the evidence did not show any title to the premises in the defendants, and was properly excluded from the jury.

An infant is supposed to be incapable of guarding his own interests; and it is the duty of a court, before it divests him of his estate, to be satisfied that he has had a full opportunity to have his day in court, by a proper and suitable guardian, and to see, notwithstanding any admission of facts, even by such guardian, that his rights are not sacrificed.

A minor may be sued in his own name, but he cannot appear by attorney, but only by guardian admitted or appointed by the court.

Where in an action of right, after trial and verdict for the plaintiff, the defendants moved to arrest the judgment, and for a new trial, for the reason, that it appeared from the record, "that a portion of the defendants were minors, and no guardian *ad litem* had been appointed by the court, to answer and defend for said minors, and no answer was in, or defence made," which motion was overruled by the court; *Held*, That the court erred in overruling the motion.

Where it appears from the record of a cause, that there are minor defendants who have not been notified of the pendency of the suit, and for whom no guardian has been appointed, the appellate court cannot presume that such defendants attained their majority before the time of the trial.

In an action of right, the judgment is an entirety; and if reversed as to one defendant, it must be as to all.

*Appeal from the DesMoines District Court.*

FRIDAY, SEPTEMBER 11.

Action of right, commenced in 1848. The cause has been three times tried in the District Court, and is now on its third hearing in this court. The facts material to a full understanding of the questions decided, will be found in the opinion of the court. The defendants appeal.

*D. Rorer* and *Browning & Tracy*, for the appellants.

1. The execution under which plaintiff claims, was not based upon any judgment, valid in law. It does not purport to issue on the original judgment, but on the stay bond. The original judgment was against Jeremiah Smith alone. The execution on which the sale was made was against Jeremiah and Samuel Smith. These facts appear by the recitals in all or in part of plaintiff's deeds. By such recitals, he is bound. *Brush* v. *Ware*, 15 Pet., 93; *Chatauque Co. Bank* v. *Risley*, 4 Denio, 480; *Smith* v. *Pope*, 5 B. Monroe, 337; *Armstrong* v. *Jackson*, 1 Blackf., 211; *McChesney* v. *Wainwright*, 5 Ham., 452; *Ellis* v. *Smith*, 10 Geo., 253; *Bank United States* v. *Benning*, 4 Cranch C. C. 81; *Bell* v. *Tombigbee Railroad*, 4 S. & M., 549; *Jackson* v. *Parkhurst*, 9 Wend., 209; *Carver* v. *Jackson*, 4 Pet., 1; *Crane* v. *Morris*, 6 Pet., 598; *Stewart* v. *Butler*, 2 S. & R., 381; *Wayman* v. *Taylor*, 1 Dana, 527. Nor could it issue on such original judgment; for by the bond, if valid, the original judgment was extinguished. *Brown* v. *Clark*, 4 How., 9.

2. Such stay bond was not a judgment, but only a confession of judgment; "a judgment confessed," is the language of the statute. Laws of 1838–9, section 13, 201; *Reesides* v. *Walker*, 11 How., 287, 288. It required the action of the court to make it a complete judgment. A judgment confessed is one thing, and a judgment entered

up, is another. They are entirely different in their character and legal force, as much so, as are a verdict and a judgment. But the statute allows executions to issue upon such confession or bond, it is said. We reply that the legislature had no power to make such a statute. It is an assumption of judicial power, which was vested in the courts, and not in the legislature or clerk. Organic law of Iowa, section 9. As well may the legislature have declared promissory notes judgments, and have allowed executions to issue thereon. As well may they have declared unpaid mortgages, decrees of foreclosure, and have authorized the recorder, when due, to issue orders of sale thereon. If they can do it in one case, they can do it in any other, and thus the right of a day in court—of judicial proceedings according to the course of the common law—of a jury trial—and of appeal, are cut off, all which were secured by the organic law of Iowa, and by the constitution of the United States. "Writs of error, &c., and appeals in chancery," shall be allowed in all cases "from the final decision of said District Courts to the Supreme Court." Organic law of Iowa, section 9. But from this modern monster, from this legislative star chamber, there is no appeal. There is no judgment to appeal from. The court had pronounced no judgment—from the court's judgment alone, is there any appeal. If there were no judgment to appeal from, then there was none on which to issue a writ of execution. The execution and sale, therefore, were invalid, or else judgments and courts have become useless and inconvenient things—inconvenient to tyrants, as they ever have been, and useless, because the legislative branch of the government has completed the tyrant's work of arrogating all power to itself.

The Smiths may have executed the supposed stay bond, but no court or jury have ever found that they did. They may have made default in paying it off, but there is no judicial finding that such was the case; all turned upon the mere assumption of the clerk, based upon the absolutism of the legislature. By the ordinance of 1787, the

Cavender v. Heirs of Smith.

provisions of which were adopted by the 12th section of the organic act of Wisconsin; and 12th section of the organic act of Iowa, the right of jury trial, and of judicial proceedings according to the course of the common law, were secured to the people of Iowa, and it was also declared that no person should be deprived of his property but by the judgment of his peers or the law of the land; but this enactment cuts off all trial—all judicial proceedings, and makes the judgments ready to hand. The legislature makes the judgments as they go, and courts become useless things. Wonderful invention!

By the term "law of the land," is meant by due course of law, or due process of law; the term does not mean mere legislative enactment. The act is void. Coke's Inst. 45–50; 2 Kent's Com., 13; *The John and Cherry Streets Case*, 19 Wend., 659; 3 Story on the Con., 661; Tucker's Blackstone, App. 304, 305; *Taylor* v. *Porter*, 4 Hill; *Parsons* v. *Bedford*, 3 Pet. 446; *Webster* v. *Reid*, 11 How. 456, 460; *Smith* v. *The State*, 13 S. & M. 140; *Wort* v. *Finley*, 8 Blackf. 335; *The Gov.* v. *Porter*, 5 Humph., 165; *Exparte Anthony*, 5 Pike, 358; *Smith* v. *Smith*, 1 How., (Miss.) 102; *Bank of Hamilton* v. *Dudley*, 5 Pet., 524; *Hughes* v. *Hughes' Admr.*, 4 Mon., 42; *Carson* v. *The Comm'l.*, 1 Marshall, 290; *United States* v. *Taylor*, 3 McLean, 539; *State* v. *Fleming*, 7 Humph. 152; *Tift* v. *Griffin*, 4 Geo. 185; *Wright* v. *Boon*, 2 G. Greene, 459; *Green* v. *Briggs*, 1 Curtis C. C. Rep. 311. And though the provisions of the federal constitution may not apply to a state court; (*Livingston* v. *Mayor of New York*, 8 Wend. 100; *Barron* v. *Mayor of Baltimore*, 7 Pet., 243); yet the territorial court was a court of the United States. The Judge held his office by a commission from the President and under an act of Congress. In the case cited from 4 Hill, the court say that "by the law of the land," is not meant a mere law or act of assembly, and that such a construction "would render the restriction absolutely nugatory, and would turn this part of the constitution into mere nonsense."

In *Hoke* v. *Henderson*, 4 Dev. 15, the court declares that statutes depriving a citizen· of his property, without a regular, trial, would not be according to "the law of the land," in the true sense of the term. In *Webster* v. *Reid*, the Supreme Court of the United States, declared and decided, that the act under which the proceedings were had, in as much as it prohibited a jury trial, was in that respect void. *Webster* v. *Reid*, 11 How. 460. The supposed statutory judgment presents a stronger case. In the case of the statute referred to in the *Webster* v. *Reid* case, only the jury trial was taken away, but in the case of the stay bond, all trial is denied; neither court· nor jury decide, and yet it was a question of fact, if any such bond was ever made. It did not originate in the court; it purports to have been taken by the sheriff, by an act in *pais.* We have the mere unsworn assertions of the sheriff, and of the clerk for it; both ministerial officers. The clerk may have been mistaken, or the sheriff may have made a false return, or the bond may have been taken and obtained by duress or fraud, and yet no opportunity is given to make the fact of the case appear. These are all questions of fact, triable by jury; such trial is cut off by the statute, and "in this respect the act is void." *Webster* v. *Reid*, 11 How. 460. Moreover, "The rendering a judgment is a judicial act, and must be done by the court." *Reesides,* v. *Walker* 11 How. 287, 288; *Goddard* v. *Coffin*, Davis, 381; *The Gov.* v. *Porter*, 5 Humph. 165 . *Exparte Anthony*, 5 Pike, 358; and *Exparte Randolph*, 2 Brock, 447, a case entirely parallel. There is a case in 4 How. (U. S.) 9, *Brown* v. *Clark*, in which the courts have seemingly recognized, or rather acquiesed in, the binding character of a somewhat similar statute of the state or Mississippi; but by referring to that case, it will be found to have turned on the question of priority of lien, and that the question of the constitutionality of the statute, was not raised by the counsel or decided by the courts. The sale in that case, was not made under the bond or statutory judgment; the bond was quashed, and the sale was under the original

judgment. By the Mississippi statute, the bond is made to "have the force and effect of a judgment," and is not, as by our law of 1839, "a judgment confessed." *Brown* v. *Clark*, 4 How., (U. S.), 9. So that, supposing the legislature to have possessed the power, both in Iowa and Mississippi, yet they have exercised it in the one case so as to make an absolute complete judgment, but in the other, only so as to make a confession of judgment, and leaving the judgment still to be rendered up. If theirs be constitutional, they may issue final process immediately; but if ours be constitutional, still something before execution, yet remains to be done, to make judgment; the court must enter it up. If this view is correct, then the statutory judgment, under which plaintiff makes title, was void, and the *fi. fa.* and sale, the deeds and all the proceedings, were, and are, nullities. A sale made on a void judgment, confers no title. *Webster* v. *Reid*, 11 How. 437; *Wright* v. *Boon*, 2 G. Greene, 457.

In *Exparte Randolph*, 3 Brock. 478, Justice Marshall declares a very similar proceeding invalid as a judicial act. That if valid at all, it is so only as a ministerial act, and that in such case, the law must be strictly complied with. By our statute of 1838–9, section 15, the stay bond, when returned into the office of the clerk, should be "entered on the judgment docket." No such *entry* is in evidence—none such appears to have been made. The original judgment alone was in evidence, as is shown by the exceptions. That judgment was released by the stay bond. So released as to be inoperative for the purposes of execution, but not so released as to destroy its lien. The sale under the supposed judgment confessed, if valid at all, was designed to relate back to the *lien*—to the date of the original judgment. Nor can it be successfully urged, that by executing the bond under the statute, the defendants consented to the *judicial effect* of the legislative enactment. Consent can not confer jurisdiction on a court, much less can judicial power be so conferred on a legislative body. And if it could, it does not appear judicially that any bond was ever

given; and such estopel, if consent could confer jurisdiction, could not arise upon the bare *assumption* of the *fact* that the stay bond was really executed by the Smiths. Supposing the conflicting purchases to have been made under judgments of equal validity, and treating the stay bond as a valid and full judgment, yet it was but a *statutory* judgment—it was not a lien—judgments of the *district courts* only are liens; nor would it impart notice of itself, or of the execution issued upon it, or of the sale on said execution, for it was a mere file among the papers. The existence of a judgment, if a judgment at all, was but by fiction of law. The judgment of the 29th of May, 1841; under which we defend, was a *judicial* judgment, and was a lien on this land from its date; therefore, although plaintiff's execution purchase was made by Grimes, 15th of May, 1841, two weeks before the date of our judgment, yet the deed was not made until the 13th of June, after our judgment lien attached, and was not recorded until August the 18th, and even then, not so as to confer notice, as is contended by the defense. Thus the judgment lien under which we hold, overreached Grimes' unrecorded purchase, which remained in parol from the 15th of May to the 13th of June, 1841. *Brown* v. *Tuthill*, 1 G. Greene, 189.

By the statute under which Grimes purchased, he was entitled to a deed *immediately*, so that for his own negligence in not procuring and recording such deed, he is postponed in favor of the lien of the subsequent judgment under which we offer to make title. Laws of 1839, 197, section 3. Thus the lien of the judgment under which the defense claim, attached on the 29th of May, 1841, and continued until the sale to Whitsel, who was a third person, and not execution plaintiff, as was our adversary, so that such subsequent purchase carries the title to Whitsel, as against the prior purchase of Grimes, by mere force of our judgment lien. *Brown* v. *Tuthill*, 1 G. Greene, 195. But more especially does it vest the title in Whitsel, without regard to the liens, unless Grimes' deed or deeds were recorded in such manner and time as would confer notice to

Whitsel, and to Frank Smith, who offered a deed under Whitsel. *Brown* v. *Tuthill*, 1 G. Greene, 195; *Blain* v. *Stewart*, 1 Iowa, 378; *Dor* v. *Flake*, 5 Shep. 249; *Wickersham* v. *Reeves & Miller*, 1 Iowa, 413; *Hopping* v. *Burnam*, 2 G. Greene, 39; *Pope* v. *Cutler*, 9 Shep. 105; *Harrison* v. *Hollis*, 2 N. & M. 563; *Jackson* v. *Chamberlain*, 8 Wend. 620; *Daniel* v. *Sorrells*, 9 Ala. 463; *Hill* v. *Paul*, 8 Miss. 469; *Coffin* v. *Ray*, 1 Met. 212; *Bellas* v. *McCarty*, 10 Watts, 13; *Summers* v. *Skinner*, 3 Pick. 52; *Boyinton* v. *Reese*, 8 Pick. 329; *Narcross* v. *Nidgery*, 2 Mass. 506; *Trull* v. *Bigaloe*, 16 Mass. 406; *Jackson* v. *Post*, 15 Wend. 588; *Guerrant* v. *Anderson*, 4 Rand. 208. The rule of the registration law is equally applicable to purchases under execution sales, as it is to purchases directly of the party by contract of bargain and sale. *Scribner* v. *Lockwood*, 9 Ham. 184; *Bellas* v. *McCarty*, 10 Watts 13; *Ellis* v. *Smith*, 10 Geo. 253; *Hosier* v. *Hall*, 2 Carter, 556; *Steele* v. *Spencer*, 1 Pet. 552; *Orth* v. *Jennings et als.*, 8 Blackf. 420, 426; *Sparks et als.* v. *The State Bank*, 7 Blackf. 469.

We will next look into the manner of certifying and recording of the two deeds from the sheriff to Grimes. The first one is dated June 13th, and acknowledged June 18th, 1841, and was taken while the act of 4th of January, 1841, was in force. Laws of 1840, 35. By that act, the certificate should state that the person acknowledging, was "personally known to be the person whose name is subscribed to the instrument as a party thereto." The language of the certificate is—"who is personally known to me, to be the same as the officer described in the above deed of conveyance;" but says nothing of the person. The further language is, that he "acknowledged the signing of the same," not its execution; and though in a previous part of the certificat eit is said, "personally appeared" James Cameron, yet it nowhere states that the officer personally knew him to be James Cameron—only that he personally knew him to be the same as the officer described in the deed. Which officer? Other officers' names are in the deed, to-wit:

the Judge's and the Clerk's. These names are in the executions, and they are recited in the deeds. This deed, then, was not a record notice, if properly in evidence; but without proof of Cameron's signature, and of his being sheriff at its date, the deed should not have gone to the jury. Laws of 1840, 39, section 30. And by the same statute, no deed is valid, except betwixt the parties and such as have actual notice thereof, until filed properly for record. Therefore, as betwixt a third party, it is invalid, without notice. Laws of 1840, 39, section 31. But if it were valid, the sale and first deed did not convey the title to Grimes, but only a lien, until the time for redemption expired, so that the actual legal title still remained in Smith, and the lien of Pursell's judgment attached to it, and the purchase under that lien by Whitsel, took precedence over Grimes' unrecorded purchase. *Doe on demise of Hosier* v. *Hall*, 2 Cart. 556; *Exparte Peru Iron Co.*, 7 Cow. 540; *Schermerhorn* v. *Merrill*, 1 Barb. 511; *Smith* v. *Colvin*, 17 Barb. 157; *Hopping* v. *Burnam*, 2 G. Greene, 39; *Wickersham* v. *Reeves & Miller*, 1 Iowa, 413. There is a case laid down in 2 Conn. reports, very closely bearing on the question of priority of record arising in this case. Both parties, as in this, claimed under execution sales. *Topliff* v. *Davis*, 1 Root, (2 Conn.) 556.

The second deed from the sheriff to Grimes, bears date 28th of October, 1843, and the acknowledgment is certified as of the same day. This deed was taken under the law of 1843, which is literally the same as the law of 1840, on this particular subject. Revised laws of 1843, 205, section 11. The certificate to this deed is equally defective with the one just considered. It does not state that McKinney was known, &c., to be the person whose name is subscribed to the instrument "as a party thereto." These latter words, to-wit: "as a party thereto," are indispensable by the very terms of the statute. The record of this deed will, therefore, not impart notice, although it was filed for record on the day of its date. Revised laws

of 1843, 208, sections 30 and 31. If these conclusions are correct, it was error for the court to exclude our documentary evidence, and also · error, to instruct that the evidence showed legal title in plaintiff; unless there was proof by parol of actual notice in Whitsel, which is not pretended; and even then, such proof should have been referred to the jury as matter of evidence. It matters not whether Whitsel's deeds from the sheriff, are certified and recorded correctly or not. He need not record at all, if he is willing to incur the risk of the lands being sold again. *Steele* v. *Spencer*, 1 Pet. 552; *Blain* v. *Stewart*, 1 Iowa, 378. That sheriff's deeds ordinarily relate back to the date of the judgment, does not alter this case, for the doctrine of relation is a fiction of law, and only applies as betwixt the immediate parties in interest, in a contest betwixt them, and not in a contest betwixt one of said parties and a third person. *Heath* v. *Ross*, 12 John. 140; Vin. Abt. title Relation, 288; *Doe* v. *Howland*, 8 Cow. 277; *Jackson* v. *Baird*, 4 John. 230; *Brown* v. *Clarke*, 4 How. 4; *Alexander* v. *Merry*, 9 Wis. 514; *Hart* v. *Rector*, 13 Wis. 479.

It is alleged against this defense, that these defendants are the widow and heirs of decedent Smith, defending in that capacity, and in that capacity only, and in virtue of the rights of their ancestor, and are therefore estopped from denying plaintiff's title. They are the widow and heirs, but not claiming solely by descent. True it is, that plaintiff has attempted to place them in that position, by his description of them in his record entry, but that does not place them in the position of defending by right of inheritance only, or of setting up exclusively a claim as heirs. They have neither pleaded, nor asserted such a right. The plaintiff cannot narrow their defense, by describing them as the heirs of decedent. They are either not in court at all, and will not be affected by any judgment in the case, or else they are here as all other defendants, and may assert any and all rights which they possess, and which any other de-

fendants might assert. Hence, they also defend by offer
ing to prove title in one of them, emenating not by
inheritance, but by purchase in an adversary proceeding;
an execution against the same common debtor, under
whom plaintiff claims. Instead of their denying their
ancestor's title, they undertake to show that it passed to
one of them, through a third person, by execution sale,
and that such sale carried the title as against plaintiff,
and that the other defendants hold under the one so
holding such title. Had their ancestor conveyed this land
to plaintiff, by deed of warranty, his children and heirs
would not be estopped from setting up the claim by pur-
chase, which they now assert. It is only a claim by de-
scent, when set up against a warranty, that is thus estopped
in law. *Oliver* v. *Piatt*, 3 How. 333, 412; *Blight's Les-
see* v. *Rochester*, 7 Whea. 535; Litt. Lect. 735; Coke Litt.
367; Bacon's Abt. Warranty. And the same rule ap-
plies with an increased force, where conveyance is by quit
claim, or by judicial or execution sale, which are similar
in effect to a quit claim; for in a judicial or execution
sale, there is no warranty. *Blight's Lessee* v. *Rochester*, 7
Whea. 535; *Freeman* v. *Caldwell*, 10 Watts, 9; *Louden
et al.* v. *Robertson*, 5 Blackf. 276; *Hensley* v. *Baker*, 10
Wis. 156.

But allowing the foregoing objections unavailing, yet
the plaintiff has only the equitable title to the premises.
His land office certificate shows but an equity. They
show that decedent purchased of the United States, on the
16th of January, 1840. The sheriff's sale, under which
plaintiff claims, was made on the 15th of May, 1841, and
the patent, which is in evidence, was issued on the 1st
day of December, 1841, more than six months after the
execution sale, and more than five months after the date
of the first deed from the sheriff to Grimes; while the
sheriff's sale under which we defend, was made on the
16th of August, 1845, after the legal title had vested, by
patent, in the judgment debtor. Until this latter sale, the
legal title remained in the judgment debtor, and by force

of this sale and deed, it passed to Whitsel, under whom we defend. If he took it with notice of a prior equity, a court of equity would take it from him in favor of such prior equity. But if he took it without notice, neither law nor equity will take it away from him. Suppose Smith, after the first sale, had assigned the patent certificate to a third person, and the patent, as is common, had issued to such third person; now, in a suit by this plaintiff against such third person, who would have the legal estate, and who would prevail? Such third person would, in the absence of fraud, or proof of his taking it with notice of plaintiff's prior equity; but taking with notice amounts, to fraud. *Rogers* v. *Brent*, 5 Gil., 573.

We are not unmindful that this branch of the defence has been, heretofore in this suit, decided adversely to defendants, by a former bench of this court; but that decision, (*Cavender* v. *Smith*, Burlington, May Term, 1851,) was made under a different state of the case, evidence and parties; and was avowedly based, in part, upon the decision of the Supreme Court of the United States, delivered by Judge McLean, in the case of *Carroll* v. *Safford*, 3 How., 460, which was a suit in equity. In that case, the court in discussing this subject, decide that, at law, the legal title is in the government until the patent issues, "but not in equity." A buys of B a tract of land; B has the legal title, receives the purchase money, and gives a title bond; in equity, the land belongs to A. The legal title is ("technically") in B. In a suit at law, can A turn B out? Of course, not. Neither can a purchaser at a sheriff's sale against A, turn B out. The decision referred to in 3 How. is inapplicable, for it was given in a chancery suit. In the case of *Cavender* v. *Smith*, above cited, our Supreme Court were more especially guided by the supposed, but then controverted, extent and meaning of the decision of the Supreme Court of the United States, in the case at law, delivered again by Judge McLean, of *Stoddard's Heirs* v. *Chambers*, 2 How., 284.

This last recited case, page 316, is especially cited by

our Supreme Court, wherein it is said by his honor, that
' Bell made the conveyance to Macky, not having the
legal title ; but when under the act of 1836, the report of
the commissioners was confirmed to Bell and his legal
representatives, the legal title vested in him, and inured
by way of estoppel to his grantee, and those who claim by
deed under him. A confirmation by act of Congress,
vests in the confirmee the right of the United States, and
a patent, if issued, could only be evidence of this, and on a
title by estoppel, an action of ejectment may be maintain-
ed. *Stoddard et al.* v. *Chambers,* 2 How. 316. Why
could the patent " only be evidence" of the legal title in
this particular case? The reason is given in the very
same paragraph by the same learned Judge, and is this,
that the legal title was previously vested by an act of Con-
gress ; and as evidence of the correctness of this view of
that case, we here cite the opinion and language of the
same learned Judge in another case, in which, after saying
" the legal title was not perfected until the patent issued,"
he says, " the case of Stoddard's heirs, etc. does not con-
travene this position, because in that case the land had
never vested in the United States, having been severed
from the domain of Spain before Louisiana was trans-
ferred to the United States." *Dubois* v. *McLean,* 4
McLean, 486. So that the decision of this court, at the
Burlington May term, 1851, was predicated on a view of
the opinion of the Supreme Court of the United States, in
the case of Stoddard's heirs, which, in a subsequent opin-
ion by the same learned Judge, is totally disclaimed, and
on the decision of the same learned court and Judge, in
*Carroll* v. *Safford,* in chancery, where the rule is different
than at law, and in which latter opinion, his honor ex-
pressly states the rule to be at law as here claimed, and as
laid down by him subsequently in the case above cited
from 4 McLean. The same doctrine is affirmed by the
Supreme Court of the United States, (opinion by Judge
Daniel), in *Gillmer* v. *Poindexter,* 10 How. 257 ; *United
States* v. *King et al.* 7 How. 846–7 ; *Dubois* v. *McLean,* 4

McLean, 446, 448; *Farmers' Loan and Trust Company* v. *McKinney*, 6 McLean, 1.

We have thus far spoken of this point as if precisely adjudicated, as it now comes up, by our Supreme Court; but such is not the case. The question was not before this court at the trial in 1851, in the shape in which it now claims our attention. This is truly the same suit, but the parties are not the same, nor the contest the same. The opinion in the decision of 1851, (Legal Inquisitor for March, 1852, 183), shows that the then defendant, Jeremiah Smith, offered the patent "to show title in himself, acquired since the judicial sale;" but in the present case, it is offered not by the judgment debtor, to show the subsequent title in himself against his prior possession, nor by his heirs, claiming *as heirs,* but by those persons claiming by and through a purchase made by a third person on execution, adversary in its nature to that under which plaintiff claims, and which it is believed, they have a right to do, unless Whitsel was a purchaser with notice, and unless Frank Smith was a purchaser with like notice. It is only by the doctrine of *relation,* that our supreme court could arrive at their conclusion, even as against Smith himself. See same opinion, 185. And we think we have clearly shown hereinbefore, that this doctine of relation does not apply as against third persons purchasing without notice, actual or implied, of the title so to be enforced by relation. The authorities cited by our supreme court, in *Cavender* v. *Smith,* May term, 1851, clearly sustain this position, and only assert the doctrine as against the judgment debtor himself, in proceedings betwixt such debtor and the execution purchaser. On the hearing of the case at that time, the title of Whitsel was not in question. It was not in evidence; he was not a party to the suit. Nor was the party defendant, then claiming under him. The present defendants have clothed themselves with Whitsel's title, since that time. In *Johnson* v. *Stagg,* one of the cases relied on, and cited by the court, in their decision, May term, 1851, Chancellor Kent expressly puts the decision upon the

ground of *notice—record notice*—to the intermediate claim ants. *Johnson* v. *Stagg*, 2 Johns. 523. Had Whitsel record notice? Had he notice of any kind? Had Frank Smith notice? It nowhere appears that either had. Then it was error to instruct that the evidence showed legal title in plaintiff; the condition should have been annexed, "*provided the jury found notice to them, from the evidence;*" nor can it be presumed that there was such evidence, to bear out the court in such instruction; for the court could not know the evidence, nor instruct in reference to it, except by leaving the *fact* to the jury; they are the judges of the evidence. *Blain* v. *Stewart*, 2 Iowa, 378. In *Heath v. Ross*, another case relied on in the opinion at the May term, 1851, and cited by the court, the doctrine is illustrated most fully. The court say: "As between the parties to "the grant, when the title is consummated by all the necessa-"ry forms, it will relate back to the date; but this relation, "which is a *fiction* of law, is *never to be adopted* when third "persons, who are not parties or privies, will be prejudiced "thereby. But the application of this fiction to the case be-"fore us, will produce no such result; for the defendant and "the person from whom he purchased, *knew* that neither of "them had any *title* to the lot. They both supposed that it "belonged to the people of this state, and afterwards made "application to *purchase* it, which was a *full recognition of* "*their title.*" We see, then, that that question was put upon the express ground of notice. As betwixt Smith himself, and Grimes, the latter would hold the land by relation; but if neglecting to *record*, Smith or his creditors sell to a third person, who purchases without notice, the last purchaser will hold it. *Heath* v. *Ross*, 12 Johns. 140. In the case relied on in 5 Gillman, (*Rogers* v. *Brent*), the assignment of the patent certificate and obtaining the patent to the assignee, after the sale on execution against the original purchaser, was fraudulent, and on that ground the doctrine of relation was applied to that case. The language of the court is too plain for mistake; they say: "Hardly a "day passes, but the common law courts are inquiring

" whether the conveyance relied upon, was not made to de-
" fraud creditors, and when the fraud is established, the
" deed is held to be void.    This doctrine and practice are too
" familiar to require a reference for their support, and yet
" *this record presents in principle, just such a case.    Rogers*
v. *Brent*, 5 Gill. 581.    Thus the leading case, or relied on
as such, for the May term decision, is not put upon the
*doctrine of relation alone*, but on that doctrine as to the
judgment debtor himself, and as to the intermediate claim-
ant, as brought *home to him by his own fraud*.    And we do
not think there is a case to be found in any book, wherein
the doctrine of *relation* is made to cut off intermediate
*bona fide* purchasers, without notice, or *without fraud*.    It
would annul all registry acts.

The authority cited from 5 Cruise's Dig., 511, in the
opinion of May term, 1851, has no reference to a case
where there is an intermediate claimant, but clearly repu-
diates its applicability to such a case; for it there states
that enrollment relates back to the bargain and sale.
And such is really the case.    Recording relates back to
the date of the bargain and sale, and makes good the title,
in Iowa, to the purchaser, against all claims, arising after
recording, but not against those intervening, without fraud
or notice, between the recording and the time of the bar-
gain and sale.    In the case cited in the May term opinion
from 4 Johnson, the court say:    "The deed from Dicken-
son to Smith can not, in its operation, relate back to the
time the contract between them was made, so as to bring
it within the scope of the decision, in the case of *Jackson*
v. *Raymond*.    It is a general rule, with respect to the
doctrine of relation, that it shall not do wrong to strangers;
as between the same parties, it may be adopted for the ad-
vancement of justice."    *Jackson* v. *Baird*, 4 Johnson, 230.

The case of *Jackson* v. *Dickenson*, 15 Johns. 309, cited
for said decision, turned simply on the question of *lis
pendens*, and has no reference to that principle of the case
now under consideration.    The case of all others, supposed
to "most broadly assert" the doctrine of relation, as al-

leged in the opinion at the May term, 1851, to-wit: *Landers* v. *Brant*, expressly recognizes the doctrine as to notice, and the rights of third persons, for which we contend. The intermediate claimants in that case, were assignees of the legatees of the judgment debtor, claiming as such, and under no other right; they were volunteers, and as such, would, without notice, be postponed in favor of a purchaser for value, under the sheriff's sale. That case turned upon the fact of such notice, as also, that the intermediate claimants were mere volunteers. *Landers* v. *Brant*, 10 How., 348.

The case of *Bagnell* v. *Broderick*, 13 Pet. 446, (opinion of Judge Catron), so much relied on in the Illinois case, cited from 5 Gillman, and sometimes cited by plaintiff's counsel in this case, declares "the patent, the superior and conclusive evidence of legal title," and that "until its issue, the fee is in the government, which, by the patent, passes to the grantee; and he is entitled to, recover the possession in ejectment;" and would in effect, turn the plaintiff over in this case, to a court of equity for relief, even if we held as purchaser with notice. It is the dissenting opinion of Judge McLean, in *Bagnell* v. *Broderick*, which, if it were the opinion of the court, would seemingly militate against us; and even that dissenting opinion is put upon the ground of fraud, and not of relation alone. Thus, we have reviewed all the decisions cited against us at a former trial in this case, on the question of relation, and have clearly shown, as we think, that, the law of every one of them is with us, as the case now stands, involving intermediate rights of third persons. *Bladen* v. *Cockey*, 1 Har. & McHenry, 230; *Stewart* v. *Mason*, 3 Har. & J. 346.

In conclusion, we will proceed to discuss objections more technical in their nature. The overruling the motion for a new trial, was error; first, inasmuch as there was no guardian *ad litem* for the minor defendants, and could be no valid appearance for them. The record entry shows all the children but two, to be minors. There is no proof, nor presumption, that they ever ceased to be such before the trial. In deed, it wereno less error, if there were such

proof, for a single step, without such guardian, or else the bringing into court the regular guardian at law, was error. A verdict against infants in such case is error, and for such error, judgment should have been arrested—arrested in full as to all the parties. *Crookshanks* v. *Gardner*, 2 Hill, 333; *Shafer* v. *Gates*, 2 B. Munroe, 453; *Cook* v. *Totten*, 6 Dana, 108; *Sheldon* v. *Quinlen*, 5 Hill, 441; *Jones* v. *Raine*, 4 Rand, 386; *Richards and Finney* v. *Walton*, 12 Johns. 434; Bacon's Abt. Error, letter M, a case of Infancy; *Arnold Duncan et al.* v. *Sanford*, 14 Johns. 417. In the latter case, the whole subject is reviewed. It was a case of error in fact, the infancy not appearing of record; but in the case before us, the infancy appears of record, and there is, therefore, error in law.

There is also error, in the court's overruling the motion for arrest, and rendering final judgment, secondly, for that it was done in vacation. Though it was on the same day of adjournment, it was, as the bill of exception shows, by an act in *pais ;* a mere letter to the clerk; and though the chancery court is always open, not so with a court of law. It can only act in term and in open court. For this, the judgment overruling the new trial, and the final judgment for plaintiff, are void; but being of record, they can only be displaced by reversal, and are proper subjects of supervision by this court. *Davis* v. *Fish*, 1 G. Greene, 406; *Clagget* v. *Gray*, 1 Iowa, 19. In the case last cited, this court decided that a bill of exceptions, made in vacation, is of no validity; but the decision can scarcely apply to a case, like the present; for though the last exception was given in vacation, yet the matter excepted to was also decided in vacation, and the exception is not only to the decision, but the time of deciding, is alleged for error.

*J. C. Hall* and *Henry W. Starr*, for the appellee.

The defendants now for the first time, assail the judgment under which the plaintiff claims title. The records show that on the 17th day of February, 1840, Smith,

Brothers & Co., recovered judgment against Jeremiah Smith, Jr.; that on the 21st day of April, 1840, an execution was issued on the judgment against Smith; that on the 28th day of May, 1840, defendant Smith, with one Samuel Smith, entered into a bond to [stay execution; that on the 9th day of March, 1841, execution issued against Jeremiah Smith, Jr., the original judgment debtor, and Samuel Smith, his security on the stay bond. The execution recites the facts and the default of payment, and "commands the sheriff to cause to be made of the goods "and chattels, lands and tenements of the said Jeremiah " Smith as principal, and Samuel Smith, his security, the " said sum," &c., the original judgment, interest and costs, and accruing costs. These facts appear by the recital in the execution and deeds, and by them we are bound. It is not doubted but the execution issued upon the judgment rendered against Smith, in favor of Smith, Brothers & Co., rendered on the 17th day of February, 1840, and that the plaintiff purchased under that execution. The objection raised is, that there was no judgment upon which the execution issued—the judgment being against Jeremiah Smith, Jr., and not Samuel Smith. That there being no judgment against Samuel Smith, renders the proceedings void. The question is now for the first time raised by the heirs of Jeremiah Smith, to avoid the payment of an honest debt of their ancestor. It is not raised by Samuel Smith, who voluntarily entered himself security for Jeremiah Smith, Jr., and agreed that it should be a confession of judgment against him, and that execution should issue, in the manner it did issue, on condition that the judgment against Jeremiah Smith, Jr., was not paid. The original judgment still remained, and execution issued as the statute required, but it was executed only against Jeremiah Smith, Jr. The effect has been precisely the same as it would have been, so far as this levy and sale is concerned, had Samuel Smith never interfered by entering the stay of execution.

Upon what principle the heirs of Jeremiah Smith can

treat this execution as a void process, it is difficult to see. If all now contended for by defendants is true and good law, the difficulty will not be overcome. If the stay bond was void, and the statute authorising it unconstitutional, and the offspring of a *Legislative Star Chamber*, the introduction of such *innocent trash* into the process, was purely surplusage—simply void. The judicial judgment, indisputable, emanating from a court of undeniable jurisdiction, against Jeremiah Smith, Jr., is so clearly referred to and made the basis of the execution, that it is still a good process, independent of the surplusage. All in all, then, Samuel Smith was in danger of receiving a call from the sheriff, without *due course of law*, or *due process of law*, as when not allowed *by the law of the land*, without *his day in court*, which process was duly executed upon the property of said Smith, according to *law*.

We have no quarrel with the lengthy brief of defendants, in relation to the rights of the citizen under the ordinance of 1787, the Organic Act, or the Constitution of the United States, or the true definition of the term, *law of the land, due process of law* or *due course of law*. We simply submit that the principle has no application whatever to the case at bar, which is a clear case of debt and compulsory payment by " due process of law. "

We do not wish to be understood as admitting that the legislative enactment of 1838–9, section 13, 201, is void; but on the contrary we believe it was binding. The principle, upon which that law is based has been recognized and acted upon daily at every term of this court since its organization. *Supercedeas* bonds are treated as confessions of judgment, and the court enter up judgment without notice to the securities, and where the constitution denies original jurisdiction. The act of the court is purely ministerial, giving the judgment a judicial shape, because the law requires the act to be done. It is a consequence of the security, and follows the act of the security, and estops him from denying the consequence of his own voluntary act.

But why cannot the Legislature provide a law, by which

an execution upon a judgment can be estopped, by a third person becoming security for the payment of the judgment within a fixed time, and authorize such voluntary act of such third person, to have the force and effect of a judgment confessed? The law fixes the consequence of the act, and the party voluntarily affirms the relation. The doctrine contended for by defendants proves too much, for unless this can be done, no party can waive a *right* to a *trial.* It becomes an unalienable right, or an attribute, rather than a privilege. There is probably not a state in the Union but authorizes judgments to be rendered in vacation, and treats defaults as confessions. The practice of issuing execution upon stay bonds began with our political existence, and to this moment their validity has never been questioned. It has been conceded law all the time of our territorial and state existence. Interests have arisen, debts have been paid, lands and chattels bought and sold, under these laws. It has been a part of a system for the collection of debts. It has had its cotemporaneous and continuous construction. Universal custom and public sanction have given it the force of law.

The next point we shall notice, arises from the delay in the process of execution on the Smith Bro. & Co. judgment, and the Purcell judgment. The judgment in favor of Smith, Bro. & Co. was rendered 17th February, 1840. That of Purcell, 29th May, 1841. The sale made under the judgment in favor of Smith, Bro. & Co., was on the 15th of May, 1841. The sale on the Purcell judgment, was made first, on the 16th of August, 1845, and second, January 25th, 1847. The first sale to Whitsel, made 16th of August, 1845, was for one thousand dollars. The second sale was for the consideration of one hundred dollars. There was a credit on the execution of eleven hundred dollars, at the date of the last execution, which shows that the judgment had been satisfied. It is contended that by the stay of execution, and the omission of Smith, Bro. & Co. to sell, before Purcell recovered judgment, that Purcell obtained a superior lien. This position is answered by saying that

the judgment of Smith, Bro. & Co. is more than one year older than Purcell's, and that, if the expiration of the stay bond is the true date, it is six months the senior of Purcell's judgment. The question is raised by defendant, by setting up the title of Whitsel. The first deed to Grimes by the sheriff, was executed the 13th of June, 1841, and recorded the 18th of August, 1841. Purcell's judgment against Smith, was rendered May 29th, 1841. It is now contended, that inasmuch as Grimes did not record the deed to him immediately, that the delay from the 13th of June to the 18th of August, opened a door for a superior lien to Purcell's judgment, and the case of *Brown* v. *Tuthill*, is relied upon as authority. There is no analogy between these cases. In *Brown* v. *Tuthill*, it is decided that an actual seizure by attachment, secures a lien as against an unrecorded deed, without notice; and the decision is based strictly upon the statute. Without the aid of the statute, the decision must have been otherwise; in the case at bar, there is no statute to aid the position assumed; on the contrary, it can fairly be presumed that the statute did not contemplate, that the deed would take effect until the time of redemption had passed, and that recording prior to that time was not required, if authorized. The title was inchoate, the conveyance incomplete, and the deed a minor, until the time of redemption had expired.

It is contended that the conveyance to Grimes is void as to Whitsel's title, because the deeds executed by the sheriff to Grimes, were not acknowledged in accordance with law: That in consequence of such defective acknowledgment, the recording of the deeds was not notice to Whitsel; consequently, Whitsel was an innocent purchaser under Purcell's judgment. "*An Act to regulate conveyances,*" passed January 4th, 1840, (Laws of Iowa, 1839–40, 35,) was in force at the time of the execution of the deeds to Grimes, on the 13th June, 1841, and 24th of October, 1843. The tenth section of that act reads: "No acknowledgment "of any instrument in writing that conveys any real estate, "or whereby any real estate may be affected in law or

" equity, shall be taken unless the person offering to make
" such acknowledgment, shall be personally known to one
" judge of the court, or the officer taking the same to be
" the person whose name is subscribed to such instrument
" as a party thereto, or shall be proved to be such by at
" least one credible witness.

" Sec. 11.    The certificate of such acknowledgment,
" shall state the fact of acknowledgment, and that the per-
" son making the same, was personally known to at least
" one judge of the court or to the officer granting the cer-
" tificate, to be the person whose name is subscribed to
" the instrument as a party thereto, or shall be proved to
" be such, by at least one credible witness.

" Sec. 22.    Every instrument in writing that conveys
" any real estate, or whereby any real estate may be affect
" ed in law or equity, proved or acknowledged and certified
" in manner above prescribed, shall be recorded in the of-
" fice of the recorder of the county in which such real
" estate is situate.

" Sec. 30.    Every such instrument in writing, certified
" and acknowledged in the manner hereinbefore prescribed,
" shall from the time of filing the same with the recorder
" for record, impart notice to all persons of the contents,
" and all subsequent purchasers and mortgagees shall be
" deemed in law and equity to purchase with notice.

" Sec. 31.    No such instrument in writing shall be valid,
" except between the parties thereto, and such as have
" actual notice thereof, until the same shall be deposited
" with the recorder for record."

The deed executed by sheriff Cameron to Grimes, on
the 13th day of June, 1841, is acknowledged, as follows :
" Personally appeared before the undersigned, a justice of
" the peace for said county, James Cameron, sheriff of
" said county, who is personally known to me to be the
" same as the officer described in the above deed of con-
" veyance, and acknowledged the signing of the same for
" the purposes therein set forth, as sheriff of said county."
The deed of the 28th of October, 1843, executed by sher-

iff McKenney, reads : " Be it remembered that on the " twenty-eighth day of October, A. D. 1843, personally " appeared before the undersigned, a notary public in and " for the county and territory aforesaid, John H. McKen- " ney, sheriff of the county of DesMoines, aforesaid, to me " personally known to be the same person described in and " whose name is subscribed to the above instrument of " writing, and acknowledged that he executed the same as " sheriff as aforesaid, for the uses and purposes therein set " forth and contained." The law requires that the person making the acknowledgment, shall be personally known to the officer taking the same, to be the person whose name is subscribed to the instrument as a party thereto. The identical words used in the statute are not used in the deed; the words " party thereto " are omitted, but the offi- cer certifies to a personal knowledge of the person described in the deed, and who subscribed the deed. The information conveyed in the certificate, is emphatically the same as that required by statute, and it is believed that this court has repeatedly recognized such acknowledgments as a substantial compliance with law.   Kinney, J., in de- livering the opinion, in *Tiffany* v. *Glover*, 3 G. Greene, 387, says : " We have never held, in giving construction to " acknowledgments, that the literal language of the stat- " ute should be adopted by the officer, but that it is suffi- " cient to employ words of the same import and force." In *Jackson* v. *Gumear*, 2 Cowen, 567, the judge certifies that the grantor was known to him, but does not add that he knew him to be the person described in and who exe- cuted the deed. The court add : " At all events, I am " unwilling to say that which depends for proof upon cer- " tificates thus drawn, are to be put in jeopardy by the " allowance of such a technical objection; for I cannot " but consider the acknowledging officer drawing such a " certificate, as possessing all the knowledge required by " the statute."   *Thurman* v. *Cameron*, 24 Wend., 93; *Ayers* v. *McConnell*, 2 Scam., 308 ; *Job* v. *Tebbetts*, 4 Gil., 152 ; *Reece* v. *Allen*, 5 Gil., 238 ; *McConnell* v. *Reed*, 2

Scam., 373 ; *Russel* v. *Whitesides*, 4 Scam., 7; *Wiley* v. *Bean*, 1 Gil., 304. The true test of a substantial acknowledgment to a conveyance, should be : does the certificate of the officer show that he possessed the knowledge required by the statute ? Does the certificate of the officer show sufficient facts to inform a person, upon a proper examination, that the facts required by the statute did exist ? If by fair intendment, these questions can be answered in the affirmative, then there can be no innocent purchasers under the registry law, and any attempt to put in jeopardy a title under such a state of facts, is so technical, that it can well be classed with the category of frauds.

On the 26th day of April, 1852, the attorney of Smith suggested the death of the defendant; on the 14th day of May, 1852, the court ordered the widow and heirs, naming them, to be made parties to the suit. The issue had been joined; all the pleadings were made up. There had been one trial on the merits, in the District Court, and one reversal in the Supreme Court. At the April Term, 1853, there was a full appearance for all of the defendants, a trial, verdict, and judgment. An appeal was taken to the Supreme Court, and at the December Term, 1855, a judgment of reversal was given, and the cause sent back upon a *procedendo*, for a trial *de novo*. On the 28th day of April, 1856, on motion of the defendants' attorney, the court gave the defendants leave to amend the answer. At the November Term, 1856, the defendants appear, a trial is had, nine bills of exceptions are taken by the defendants, and a verdict is rendered by the jury. After the rendition of this last verdict, four and one half years after the heirs were ordered to be made parties, and four years after the defendants appeared, and three and one half years after a regular trial, and one year and one half after the whole cause had been finally decided by the Supreme Court, the question of infancy in part of the defendants, is raised by attorneys, on a motion in arrest and for new trial. The motion is made by the defendants, by their attorneys; and the very motion is based upon the fact that the de-

fendants are minors, and cannot appear by attorneys. *Shepherd* v. *Hibbard*, 19 Wend., 96. The mere fact that a part of the defendants are referred to as minors, in May, 1852, furnishes no excuse for this motion, and exception in November, 1856. The record is profoundly silent on the subject, after May 14th, 1852. The cause goes on; as time passes, the minors grow towards majority, as the court will take judicial notice. Will not the court follow the record— the acts of the parties are proven by the record—and presume that the defendants were properly in court, properly making their defence—that they had passed their minority, and that the judgment in the District Court was correct? Will not this court presume, in the absence of all contradiction, that the proceedings have been regular, and if, in fact, an error has been committed, turn the parties over to the usual remedy of a writ of error *coram nobis*, where errors in fact can be assigned and tried. *Fitch* v. *Fitch*, 18 Wend., 513; *Fellows* v. *Nixon*, 18 Wend., 563; Bingham on Infancy, 122. If a party comes of age, pending a suit, he should appoint an attorney forthwith. Same, 123, note 7. It seems that an actual defence by one acting as guardian, may be sufficient without any express appointment. *Brown* v *McRea's Executors*, Munf., (Virg.), 439; *Priest* v. *Hamilton*, 2 Tyler, (Vt.,) 44; *Mercer* v. *Watson*, 1 Watt., 330; *Cato* v. *Easley*, 2 Stew., (Ala.,) 214. The rule as to appearing by attorney, relates only to the appearance on the record, and does not deprive the infant of professional aid. 11 Wend., 164. An infant may appear by common guardian or by his next friend; if, however, he appear by attorney, no objection can be taken after verdict. *Althorp* v. *Backus*, Kirby, 407; Code, 248, section 1688—"Minors may sue by their guar- "dians, who shall be responsible for costs of suit. They "may also defend by guardian. Section 1689. Those who "have no guardian, may sue by next friend, who shall be "responsible for costs. The court may appoint a guardian "*ad litem*, to defend for a minor who has no other guar- "dian." Code 224, section 1491—"The father is the nat-

"ural guardian of his minor child. If he dies or is "incapable of acting, the mother becomes the guardian."

Smith, the father of the minors, was dead; the mother became the guardian of the minor children. The mother appears, and a full defence is made. The court is only authorized to appoint a guardian *ad litem* for a minor, when the minor has no other guardian. In this case, the minors had another guardian, a natural guardian. The court then could not appoint a guardian *ad litem*. The guardian authorized by law to defend, did defend. The code has changed the old law, and requires suits to be commenced and defended in case of minors, by guardians. The court can only appoint when the minor has no guardian. It should be borne in mind that the defence, so far as the pleadings are concerned, was made by the ancestor; that the widow and heirs were made parties, not technically, to defend, but for the purpose of trial and judgment; that it can not be shown that the least prejudice has resulted to the defendant; and that the objection is conceded to be a mere technicality. It will be found upon examination, that the cases cited and relied upon by the defendants, in relation to infants and minors, are of a class where a plea of infancy can be interposed; where infancy would be a good defence. But in an action of right, infancy of the defendant, is no answer. The action is joint and several, one or all of the defendants can be charged, and, upon the trial, the verdict and judgment may be against a part or all.

On the motion for a new trial, the judge took the matter under advisement, as appears by a bill of exceptions; and as soon as he was satisfied, ordered the clerk to enter the judgment. The judgment is all regular, as it appears on record, and the whole matter rests in the bill of exceptions. The exceptions were made in vacation, when the court was not in session, and is, therefore, not a judicial act. That failing, there is nothing on the record to show but that the judgment was rendered when t purports to have been rendered. The practice of courts to take causes

Cavender v. Heirs of Smith.

under advisement, and decide them after the adjournment of the court, and order judgment to be rendered as of the term, is as old as the courts themselves in this state. It is almost an essential element in the administration of justice and correct judicial proceedings.

WRIGHT, C. J.—In disposing of this case, we shall confine ourselves to the errors urged by counsel in their argument, and shall not undertake the examination of such as may be assigned, but not relied upon. Plaintiff claims title, under and by virtue of a sheriff's sale, made on an execution in favor of Smith, Bros. & Co., and against Jeremiah Smith, the principal, and Samuel Smith, his surety, in the stay bond. It seems that after judgment against Jeremiah Smith, he entered bail to stay execution, the said Samuel becoming his surety. After the expiration of the stay, execution issued against the principal and surety, and was levied upon the land in dispute, as the property of the said Jeremiah. The clerk, upon taking and filing said stay bond, made no entry of judgment against the surety, nor was there ever any other journal entry of judgment, than the one originally rendered against the principal. The defendants now insist, that this bond extinguished the original judgment—that the execution was not issued upon any judgment, valid in law, and was therefore void. The substance of the argument upon this point, as we understand it, is this: that the original judgment was against Jeremiah Smith; that the stay bond was not a judgment, but that it required the action of the court to make it complete; and that the statute, providing that such bonds should operate as a judgment confessed, and allowing executions to issue upon the same, was an assumption of judicial power by the legislature, and vested power in the clerk, which could only be given to the courts.

Many authorities are referred to, for the purpose of showing what it meant by the terms "law of the land"—"due course of law"—"due process of law;" and an

effort is made to demonstrate, that the act which provided that such stay bond should operate as a judgment confessed, was void, for the reason that it denies or takes away a trial in the due course of the law. We cannot but think that all of the learning, (and there is much of it), upon these subjects, is entirely inapplicable to the case at bar. It will be remembered that it was the land of the principal, and not of the surety, that was sold. As to him, it is admitted there was a valid judgment. The execution contained the usual recitals of judgment against Jeremiah; the entry of stay, and proceeds to direct the sheriff to make the amount thereof from the said Jeremiah, as principal, and said Samuel, as surety. Admitting that so much of said execution as referred to said stay bond, and directed the sheriff to make the money from the said Samuel, as surety, was unwarranted, and gave the officer no power, because, as defendants claim, it was founded upon a proceeding that was void, it would still be difficult to understand, how Jeremiah Smith, the principal, and who owned the land sold, could complain. If Samuel could, it does not follow that Jeremiah could. But aside from this, we have no doubt but that the execution was a valid process against both of the Smiths. The law simply provided, that such a bond should operate as a judgment confessed. The consequence of the act of the surety in entering into such a bond, was fixed by the law, and if he voluntarily entered into it, it certainly would seem clear, that he was thereby estopped from denying the consequences of such voluntary act. It is well said by plaintiff's counsel, that the position of defendants proves too much; for unless he is bound by the consequences resulting from voluntarily entering into such a bond, then no party could waive a right to a trial. Such a right would be an unalienable one, an attribute, rather than a privilege that might or might not be claimed or waived.

The next objection we shall notice is, that the deed from the sheriff to the purchaser under the execution, is not properly acknowledged. It seems that soon after the sale,

Cavender v. Heirs of Smith.

and before the expiration of the time given by the law for redemption, the sheriff made a deed to the purchaser, and again, after the expiration of said time, made a second conveyance. Objections are made to the certificate of acknowledgment attached to each deed. We shall confine our attention to the last one, which is as follows:

"TERRITORY OF IOWA, } SS.
    DES MOINES COUNTY.

Be it remembered, that on the 28th day of October, A. D. 1843, personally appeared before the undersigned, a Notary Public in and for the county and territory aforesaid, John H. McKenney, sheriff of the county of Des Moines aforesaid, to me personally known to be the same person described in, and whose name is subscribed to, the above instrument of writing, and acknowledged that he executed the same as sheriff as aforesaid, for the uses and purposes therein set forth and contained.

In testimony whereof, I have hereunto set my hand, and affixed my official seal Notarial, at Burlington, this 28th day of October, A D. 1843.

WM. B. REMEY,

[SEAL.]                                               Notary Public."

The objection urged to this certificate is, that it does not state that, "McKenney was known, &c., to be the person whose name is subscribed to the instrument, as a party thereto"—appellants contending that the words "as a party thereto," are indispensable, by the very terms of the statute. The objection is not tenable. Such a certificate is good, though not in the language of the statute, provided the words used, substantially comply with the object and meaning of the law. *Tiffany* v. *Glover*, 3 G. Greene, 387; *Reeves & Miller* v. *Wickersham*, 1 Iowa, 413. Substantially, this certificate can mean nothing else than that the person who subscribed the deed, subscribed and acknowledged it " as a party thereto." He signs the deed "John H. McKenney, sheriff of DesMoines county, I. T.," and the officer certifies that "John H. McKenney, sheriff of the

county of DesMoines aforesaid," whose name is subscribed to the above instrument, "appeared before him, and acknowledged that he executed the same as sheriff as aforesaid." Can there reasonably be any two constructions given to this language? Can any person doubt, but that McKenney acknowledged and executed this deed, as a party thereto, and that as such party, he appeared before the certifying officer? To our minds, there is no more doubt, than if the identical words of the statute had been used.

A third error is based upon these facts: At the time of the judgment, execution and sale, Jeremiah Smith held the land by purchase from the United States—having as the evidence of his title, the duplicate of the Register of the proper land office. After this, he obtained the patent in his own name; and it is urged now, that by such patent, the legal title to the land was in Smith at the commencement of this suit, and as such legal title must in this action prevail over all others, plaintiff cannot recover. It would appear to be a sufficient answer to this objection, to say that this very question was before this court in this same case, in May, 1851, and ruled against the position assumed by appellants. 3 G. Greene, 349. We think the question is fully and sufficiently examined in that case, and concurring as we do, most unhesitatingly, in the disposition of it there made, shall not again examine it at length. It is proper to add, however, that appellants insist that the question now arises between different parties, claiming under different titles, and that it is not in fact, the same question previously determined.

This position is based upon the fact, that subsequent to the judgment on which this land was sold, a second judgment was obtained against Smith, in favor of one Purcell, upon which, after the issuing of the patent, an execution was issued, and said land sold to Whitsel, who conveyed to one of the defendants herein. And the argument is, that said defendant holds under said second sale, which was made after the legal title (by the patent) vested in

Smith, and not as one of the heirs of the judgment debtor. What difference this can make, we do not see. If, as was held in the former case, "by his purchase, Smith acquired all the property which the United States had in this land; if, as there stated, the sale was without reservation, and the right acquired thereunder, was unconditional and absolute; if all the equity, and in fact all the legal title, passed from the government to the purchaser; if the government retained only the formal, technical legal title, in trust for the purchaser, until the patent issued; then it is difficult to understand, why the purchaser under the first sale, did not obtain a good title; or how, after that, any interest remained in Smith, or could be conferred upon him by the patent, which could be reached by a subsequent judgment and sale. And see *Arnold* v. *Grimes*, 2 Iowa, 1.

The original judgment was rendered against Jeremiah Smith, on February 17, 1840. On May 15, 1841, the premises in dispute were sold under the execution, to the grantor of plaintiff. On the 18th of June next after, the sheriff executed to said grantor a deed, which was filed for record, August 18th of the same year. On October 28th, 1843, the sheriff made a second deed to Grimes, (plaintiff's grantor), which was filed for record on the same day. Grimes conveyed to plaintiff, May 3d, 1844, and this deed was filed for record on the next day. On May 29th, 1841, one Pursell recovered judgment in the same court, against Jeremiah Smith. An execution issued on this judgment, June 19th, 1845; and on the 16th of August of the same year, the premises in dispute were sold thereunder to one Whitsel, who obtained a deed from the sheriff, November 24th, 1846, and filed the same for record, January 23d, 1847. On the 10th of December, 1846, a second execution was issued on said judgment, under which, on the 25th January, 1847, the interest of said Smith in the same land, was again sold to said Whitsel, who took a second deed, May 8th, 1848, which was filed for record on the 12th of the same month. On March 22d, 1852, Whitsel and wife conveyed all their interest in said land to one of the defendants, George F. Smith.

The judgment in favor of Pursell, the executions issued thereon, the deed to Whitsel, and the one from Whitsel to Smith, being offered in evidence by defendants, were objected to by plaintiff, and the objection sustained; and the ruling thereon, presents the next question brought to our attention by counsel. And their argument, briefly stated, is this, that although Grimes purchased two weeks before the date of the Purcell judgment, yet the deed was not made to him until after the lien of said judgment attached, and it was not recorded until August 18th, 1841. Thus the judgment, (says counsel), under which we hold, overreached Grimes' unrecorded purchase, which remained in parol from the 15th of May to the 18th of June, 1841; and again, "the lien of the judgment under which the defense claims, attached on the 29th of May, 1841, and continued until the sale to Whitsel, so that such subsequent purchase carries the title to Whitsel as against the prior purchase of Grimes, by mere force of our judgment lien." The argument is unsound. The plaintiff claims under a judgment dated February 17th, 1840. Defendants claim under one of May 29th, 1841. May 15th, 1841, the premises were sold on the execution under which plaintiff claims. On August 16th, 1845, the first sale was made under the Purcell judgment. The first deed to Grimes was made June 18th, 1841, and the second one, October 25th, 1843. The first deed to Whitsel was made November 24th, 1846, and the second one, May 8th, 1848. Plaintiff took his deed from Grimes, May 31st, 1844, and George F. procured title from Whitsel, March 22d, 1852. And thus we see, that the judgment under which plaintiff claims, was rendered prior to that under which defendant claims, and that plaintiff's grantor purchased prior to the rendition of the Purcell judgment. It also appears, that nearly two years before there had been any levy or sale under the second judgment, both of the deeds had been made to Grimes, and the same filed for record; and that before such levy, Grimes had conveyed to plaintiff. Now, if the lien of

the judgment under which defendants claim, attached on the 29th of May, 1841, why did not the lien under which plaintiff claims, attach February 17th, 1840? And especially has this inquiry pertinency and force, when we consider that the sale under the first judgment, took place prior to the rendition of the second one; and that both of the deeds to Grimes, as well as the one from Grimes to plaintiff, were made and recorded long before there had been any sale under the second judgment. The plaintiff claiming under the senior judgment, his title would overreach that obtained under the junior one, even though defendants' grantor had first purchased. *Marshall* v. *McLean*, 3 G. Greene, 363. If so, much more clearly, must plaintiff's title prevail, where he claims under a senior judgment—a senior levy—a senior sale—and a senior deed.

After the commencement of this suit, and after issue joined, Jeremiah Smith departed this life. At the next term thereafter, counsel for defendants suggested this fact, and on motion of plaintiff's attorney, it was ordered that the widow and heirs of said Jeremiah, (naming them), should be substituted as defendants, " and that they be notified of the pendency of the same. " This order was made at the May term, 1852, at which time, as shown by the record, five of the heirs were minors. No notice was ever issued; nor is there anything to show, that said heirs were ever notified of the pendency of said cause. On the 26th of April, 1853, this entry appears:

" John Cavender vs. Ellen M. Smith, widow, and Wm. " H. Smith, Geo. F. Smith, and others, children and heirs of " Jeremiah Smith, deceased. This day this cause came on " for trial on the issue joined by the parties, and also came " a jury, to wit:" &c.

A trial was had, which resulted in a verdict and judgment for defendants. On appeal, the judgment below was reversed, and a procedendo issued, entitling the case, as it had been throughout in this court, as that of "John Cavender vs. the Heirs of Jeremiah Smith." In the District

Court, at the April term, 1856, this entry appears: "On motion of defendant's attorney, leave is given him to amend answer." No such amendments, however, appear to have been made. At the November term, 1856, of the district court, the judgment now appealed from was rendered, the journal entry of the trial being as follows:

"John Cavender vs. Ellen M. Smith and others, heirs of "Jeremiah Smith, deceased. This day came the parties "by their attorneys, and to try the issue joined, a jury was "called, &c."

The case appears to have been fully tried; to have been argued by counsel for the respective parties; and the verdict being for plaintiff, defendants moved an arrest of judgment and for a new trial, for the following among other causes: "Because it appears from the record, that a por- "tion of said defendants were minors, and no guardian *ad* "*litem* was appointed by the court, to answer and defend "for them, and no answer was in, or defence made." This motion was overruled, and this presents the next objection made by counsel to the action of the court below. It is most manifest that after the suggestion of the death of the ancestor, in all the proceedings, the heirs were treated as in court, and defending said cause. And it is just as evident, that said minor heirs never were notified; that they never did answer or plead; and that no guardian *ad litem* was ever appointed for them. Whether any guardian was ever appointed for them in the county court, does not appear. Can they under the circumstances, after verdict, make the objection stated? We conclude that they can, and that the judgment should have been arrested and a new trial granted.

At common law, infants were required to sue and defend by guardian. By the statute of Westm. 16, 48 & 2 C. 15, they were authorized to sue by *prochien ami*. These statutes, however, gave only an accumulative remedy; for the infant might still sue, either by guardian or by next friend. Co. Lit., 135, b. note, 220; *Miles Boyden*, 3 Pick., 213; 3 Bacon's Ab., 616. The code simply recognizes this com-

mon law rule, and provides the same cumulative remedy —it being therein declared, that minors may sue and defend by guardian; that those who have no guardian, may sue by next friend; and that, the court may appoint a guardian *ad litem*, to defend for a minor, who has no other guardian. Sections 1688, 1689. In this case, the record shows affirmatively that, at the time of the death of the father, five of the defendants, (his children and heirs,) were minors. They were admitted to be minors by plaintiff at the May term, 1851, when he moved that they be notified of the pendency of said cause. They were never notified; they never appeared by guardian; nor was there even a next friend appointed to defend for them. To say that such minors should be concluded by a trial, thus conducted, we think, would be to establish a rule dangerous in the extreme—a rule which would be at variance with all of our settled notions of law, as applied to the rights of infant parties in a legal proceeding.

We do not believe that any case can be found, where the property of infants has been disposed of under the circumstances herein disclosed. The infant is supposed to be incapable of guarding his own interests, and it is the duty of the court, before it divests him of his estate, to be satisfied that he has had a full opportunity to have his day in court, by a proper and suitable guardian; and to see, notwithstanding any admission of facts, even by such guardian, that his rights are not sacrificed. *Walton* v. *Conlon*, 1 McLean, 120; *Greenup* v. *Bacon*, 1 Mon., 108; *Austin* v. *Charlestown Female Seminary*, 8 Met., 196; *Bloom* v. *Bardick*, 1 Hill, 131; *The Bank of U. S.* v. *Ritchie*, 8 Peters, 128. The minor may be sued in his own name, but he cannot appear by attorney, but only by guardian, admitted, or appointed by the court. *Clarke* v. *Gilmanton*, 12 N. H., 515; *Alderman* v. *Tinell*, 8 Johns., 418; *Valentine* v. *Cooley*, 1 Meigs, 613; *Knapp* v. *Crosby*, 1 Mass., 479; *Bank* v. *Ritchie*, 8 Peters, 128; *Mercer* v. *Watson*, 1 Watts, 330; *Comstock* v. *Carr*, 6 Wend., 526; *Starbird* v.

*Moore*, 21 Vermont, 530; 3 Bacon's Ab., 616; *Mackey* v. *Grey*, 2 Johns., 192.

It is claimed by counsel, however, that there is nothing to show that said five defendants were minors at the time of the trial; and that they may have attained their majority before that time. In the first place, it may be answered to this, that the material inquiry is, what was their age at the time they appeared and plead, (if there was such appearance,) and not at the time of the rendition of the judgment. And if it is claimed that a party, by appearing and defending a cause, after attaining his full age, thereby waives any error resulting from appearing and pleading in the first instance by attorney, the answer in this case, is that the record does not show that these defendants had, before trial and judgment, attained their majority. We cannot presume that they were of full age, at the time of the trial. By the record, they appear to be minors. We will, certainly, not allow this to be contradicted by a presumption. But it is further urged, that the remedy of defendants is by writ of error *coram nobis*. Without determining whether they might not have this error corrected in that way, we are quite clear that they may urge the objection in this court. The record discloses the minority of these parties, and the fact that there was a trial, without notifying them of the pendency of said cause, or without appointing any person to defend for them. Under such circumstances, whether an error in fact or law, this court will correct it. If the record did not disclose their minority, and it was claimed that there had been a trial, and the rights of these parties had been settled, when they were incapable of defending themselves, it might, with propriety, be said, under our practice, that such objection should be made in the District Court, by application for the writ of error *coram nobis*, and not in this court.

Finally, it is said, that if the minor cannot appear in the court below, neither can he prosecute a writ of error or appeal, by attorney   A sufficient reply to this is, that at least the adult heirs can prosecute this appeal, and the

cause being before us, it is our duty to see that the interests of the infant defendants are properly protected.    It is a matter of every day practice, almost, for courts to guard, by their orders and decrees, the rights of the ward, even where a guardian appears ; and much more is it their duty to do so, where his estate is sought to be divested, without any proper appearance on his part.    It is the duty of every court to watch, with jealous care, the interests of those parties who, in legal contemplation, are incapable of asserting their just rights.

The only remaining question is, shall the judgment be reversed, as to all of said defendants ? or, only as to said minors ?.   The general rule, we believe to be, that a judgment is an entirety, and if reversed as to one, it will be as to all the parties appealing.    *Cruikshank* v. *Gardner*, 2 Hill, 333 ; *Sergeant* v. *French*, 10 N. H., 444 ; *Richards et al* v. *Walton*, 12 Johns., 434.   And yet, there are cases in which the judgment below may be affirmed as to part of the appellants, and reversed as to the others.    This may be done, for instance, where the judgments are distinct.    But where, as in the case before us, the judgment is entire, the affirmance or reversal must be total.    *Bradshaw* v. *Callaghan*, 8 Johns., 566 ; *Richards* v. *Walton, supra ; Arnold* v. *Sandford*, 14 Johns., 417.    These defendants claim title from a common source.   If the plaintiff succeeds as to one, he must as to all.   If he fails against one, he must against all.    We cannot but think, therefore, that to affirm the judgment as to the adult heirs, and reverse it, and order a new trial as to the infant defendants, would be, both legally and logically, inconsistent.

Judgment reversed.