## JAMES H. LONG, GARRARD LONG, JOHN P. LONG, SOUTHEY LONG, WILLIAM B. LONG, AND WILLIS LONG v. A. H. DOLLARHIDE.

PAROL PARTITION.—A parol partition of land may be made by co-owners under the Mexican law, as well as by tenants in common under the common law.

SAME—WHAT CONSTITUTES.—In order to uphold a parol partition, under both the Spanish and common law, it must satisfactorily appear that there was not only an agreement to make the partition, but that the same was fully executed and followed up by a several possession, by either the parties themselves or their grantees.

SPANISH LAW—PAROL SALE OF REAL ESTATE.—Under the Spanish law, contracts for the sale of real estate rest upon the same footing with those relating to personal estate, and may be by parol or otherwise, at the option of the parties.

PRIOR AND SUBSEQUENT PURCHASERS OF LAND.—The rule that a subsequent purchaser in good faith and for a valuable consideration, and whose deed is first recorded, will hold the land conveyed, as against a prior purchaser, only applies where both parties claim under the same grantor.

BONA FIDE PURCHASE—HOW PROVED.—The burden of showing that he is a purchaser in good faith and for a valuable consideration is cast upon the one claiming under a second deed but recorded first in point of time, and the deed itself is not evidence of these facts, but they must be shown by other testimony.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The defendant in this action, by his title deraigned from Pena, claimed to be a tenant in common with plaintiffs in the demanded premises.

The other facts are stated in the opinion of the Court.

*Whitman & Wells*, for Appellant.

A parol petition is only good, whether judged by the rules of civil or common law, when it is open, notorious, and followed immediately by possession.

The parol agreement is merged in the act, and though the agreement may be proved, it is not as a substitute for acts, but to explain the acts. In this case, the most that can be made of the evidence is a loose declaration from one tenant in common to the other, or between the two, that each might sell a half league of land indeterminate in locality or quality, and not reduced to possession. As against the defendant in

this case, in any event, the evidence was incompetent; he could only be bound by acts which would impart notice to him, not by loose conversations, most probably very imperfectly understood, and at the time of trial at *nisi prius* unequivocally denied by one of the parties said to have been engaged therein. The rule existing in this country as to parol partition is very well expressed in *Mount* v. *Merton,* 20 Barbour, 124. Although this transaction took place in 1847, it was practically done under the common law, or rather, under American rules, as appears by the very contract "A;" however that may be, we assume, for the purposes of this argument, that the civil or Mexican law did not differ from the common law. If this position be correct, then we shall well take our second point, which is : That the evidence introduced did not prove any partition. The evidence has been rehearsed at some length, and from the facts occurring and existing as therein detailed, no person, unless blessed with powers of divination, could ever have surmised any special occupancy of any special half league of the forty-four thousand and odd acres, appearing by the patent in evidence, by Vaca or his grantees, or Pena or his grantees. It will be remembered that paper "A" was only an agreement to convey, and it was only with reference to paper "A" that the proof before recited was made; but, subsequently, plaintiffs introduced paper "B." This paper is a deed made between Vaca and Pattens and Lyon, in 1849, conveying to the grantees " all his right, title, and interest, in and to a certain tract of land." If we judge this instrument by the common law rule, it conveyed nothing more than it pretended to convey, and, at its utmost, could only make Vaca's grantees tenants in common with Pena. Strictly, it is utterly void as to Pena or his grantees, being a conveyance by a tenant in common to a stranger, by specific metes and bounds. (*Stark* v. *Barrett,* 15 Cal. 362.)

A review of the whole testimony shows that plaintiffs and defendants are tenants in common, if either take anything by their deeds. That defendant has possession of only about one

hundred and sixty acres, and that plaintiffs are in possession of the remainder of the half league. That, even admitting plaintiffs' theory to be correct, as to the efficiency of the parol partition, and the effect of the subsequent conveyance from Vaca, defendant being an innocent purchaser, without notice, for a valuable consideration, cannot be affected thereby.

*Williams & Thornton*, for Respondents.

According to the Spanish law unchanged by legislation, all contracts in regard to land might be made by parol. The title to land was not conveyed by deed, but passed by virtue of the contract. Sales of land under that system of laws could be made by parol. The Louisiana cases to this effect are numerous. The following are some of them: *Gonzales* v. *Sanchez*, 4 Mart. N. S. 657; *De Vall* v. *Choppin*, 15 Lou. 566; *Landry* v. *Martin*, 15 Lou. 1; *Leblanc* v. *Victor*, 6 Martin's N. S. 257; *Maes* v. *Gillard*, 7 Mart. N. S. 317; *Ducrest* v. *Bijean*, 8 Mart. N. S. 197; *Sackett* v. *Hooper*, 3 Lou. 107; *Choppin* v. *Michel*, 11 Robinson, 233; *Badon* v. *Bahen*, 4 Ann. 467.

See, also, 1 Sala's "Illustracion Derecho Real," 271; and 2 Tapias "Febrero Novisimo," (edition published at Paris in 1855,) Sec. 3, p. 134, and Sec. 31, p. 147; where the same rule is stated as to sales of land. According to these authors, the Spanish law made no difference as to the requisites of a sale of personal or of real property. (See, to the same effect, Law 6, Title 5, Partida 5.)

Such also seems to have been the opinion of the Supreme Court of the United States, in *Strother* v. *Lucas*. (See the opinion of the Court in that case, 12 Peters, 447, 448.)

The contract of exchange of lands can also be made under the Spanish law by parol, with or without writing. (See Law 1, Title 6, Partida 5.) Donation can be made also with or without writing. (Law 4, Title 4, Partida 4.)

Promises and obligations can be entered into with or without writing. (Law 2, Title 11, Part. 5.)

James H. Long *et als. v.* A. H. Dollarhide.

By the Law 2, Liber 10, of the Fuero Juzgo, the partition which is made between brothers, although it is not in writing, is valid, if it can be proved by witnesses. According to Law 8, Liber 3, Title 5, of the Fuero Real, the partition made between brothers, or between the relations of those who inherit, shall not be undone, although there may not be writing.

Partition can be made *judicially* or *extra-judicially*, without the intervention of the Judge. (Febrero Novisimo, 4th Vol. Sec. 3, p. 61.) It can be made *intellectually*. (Ib. Sec. 1, p. 88; *Wells* v. *Compton*, 3 Martin, O. S. Marg. 143.)

The Court say, in the case just cited from 3 Martin: "A line which can be ascertained by measurement, according to distances already agreed on, produces as perfect a separation in the eye of the law as that which may be drawn by going from one marked object to another. There is no difference. The legislation of the country, at the time the transaction took place, made none. Febrero states, in express terms, that partition may be either real or intellectual; for, says he, as things are divided intellectually by the law, they may be by man; and he adds, that the intellectual division may not only be of rights and actions, but also of corporeal objects."

In the same manner we say in this case, the partition was made by the calls in the deeds. The south line across the valley was plainly described in the contract with Vaca, on the north of which, one half a league of land was to be surveyed; and in the deed of Pena to Hoppe and Hollingsworth, a half a league of land was conveyed, having for its southern boundary the north boundary line of the land sold by Vaca to the Pattens and Lyon. Thus the partition was consummated, and Pena exercised the rights of a proprietor in the sale to Hoppe and Hollingsworth.

By the Court, SANDERSON, C. J.

This is an action of ejectment, brought to recover the possession of a tract of land, part of the Rancho Los Putos,

situated in Solano County. The plaintiffs obtained judgment in the Court below, and the defendant appeals.

Both parties claim under a grant from the Mexican Nation to Manuel Vaca and Juan Felipe Pena, and under a patent to them from the Government of the United States, bearing date June 4, 1858. The plaintiffs claim under paper title from Vaca, and the defendant under like title from Pena, plaintiffs' title being the oldest. The plaintiffs further claim that they and their grantors acquired Pena's estate in the land in question at the same time that of Vaca was obtained, by reason of a parol partition between Vaca and Pena, made at or before the sale by Vaca to plaintiffs' grantors, by which Vaca was to have in severalty a half league of land, of which the land in question is a part, and Pena was to have another half league in like manner. Whether the plaintiffs did thus acquire Pena's estate is the principal question presented by the record in this case.

That a parol partition of land may be made by co-owners or co-proprietors, under the Spanish or Mexican law, as well as by tenants in common under the common law, is a proposition not denied by counsel for the defendant; but it is insisted that the evidence fails to establish a partition in the present case. The determination of this question involves a patient analysis of all the testimony bearing upon the point.

In order to uphold a partition under the Spanish law, as well as under the common law, it must satisfactorily appear that there was not only an agreement to make the partition, but that the same was fully executed and followed by a several possession by either the parties themselves or their grantees. What will amount to a several possession sufficient to complete the partition must in a measure depend upon the circumstances of each particular case. So far as the question is controlled by legal rules, we have been unable to ascertain that there is any material difference between the Mexican and common law; but, if any difference exists, it is certain that the less rigid rules are found in the former system, growing out of the fact that under that system less importance is

attached to real estate than has always been accorded to it by the common law.  Under the Spanish law—independent of legislation avowedly had for the purpose of facilitating the collection of Government duties—contracts touching the sale of real estate are put upon the same footing with those relating to personal estate, and may be by parol or otherwise, at the option of the parties.  (Law 6, Title 5, Partida 5.)

So, also, contracts for the exchange of lands may be by parol, with or without writing, (Law 1, Title 6, Partida 5,) and donation of land can- be made in like manner ; also, promises and obligations can be made and entered into with or without writings.  (Law 4, Title 4, Partida 4, and Law 2, Title 11, Partida 5.)

It is clear, therefore, that such acts as are sufficient to work a partition between tenants in common, under our system, cannot fail in satisfying all the demands of the Mexican law.

It appears from the record that Manuel Vaca and Juan Felipe Pena were jointly in possession of and living upon the Rancho Los Putos in 1847, under a grant to them from the Mexican Nation.  In March of that year, Vaca entered into a written contract with plaintiffs' grantors, John Patten, Sr., John Patten, Jr., and Albert G. Lyon, for the sale of half a league of land belonging to the Rancho Los Putos, the latter agreeing to pay therefor a valuable consideration, part in money and part in labor to be bestowed upon the house in which Vaca was at that time dwelling.  This written contract was ·drawn by one J. D. Hoppe, and signed by him and one Nathan Coombs as witnesses.  This document is contained in the transcript and designated " Paper A," which designation we shall adopt.  On the 7th day of April, 1849, Vaca, pursuant to his covenant as expressed in "Paper A," made a deed of half a Spanish league of land to the Pattens and Lyon. This deed is also set out in the transcript and called " Paper B."  There is a slight variance between the descriptions of the land as contained in these two instruments ; but it is shown by the testimony of a surveyor, who had run out the lines pursuant to the calls of both instruments, that either

description embraces the land in controversy. All questions of conflict between the two instruments must be determined by "Paper B," it being the more solemn and formal instrument, and the one by which the legal title actually passed. The land is described in "Paper B" as follows, viz: "One half of a Spanish league of land lying in the first valley east of the present residence of said Vaca, beginning at Alamo Creek, at a certain oak tree marked "B," being near the first crossing of said creek; thence east, across the valley, to Ulattis Creek; thence up the said Ulattis Creek to a point where the said creek leaves the base of the mountain; thence along the base of the mountain a sufficient distance, so that running the north line parallel with the south across the valley to the western side of the valley and thence down the base of the mountain on said western side to the point of the small mountain, thence due west to said Alamo Creek, and then down said creek to the point of beginning, will include the quantity of one half of a Spanish league of land."

It further appears from the record that half a league of land, lying on the north and adjoining that described in "Papers A and B," was sold by Pena to J. D. Hoppe and H. Hollingsworth. At what time this sale was made does not clearly appear, but the deed, which is contained in the transcript, bears date on the 30th day of March, 1850. It is apparent, however, from the recitals contained in a subsequent conveyance by Lucy Hoppe, widow of said J. D. Hoppe, and from the further fact, disclosed by the testimony, that Hoppe was residing upon the land at the time of the sale from Vaca to the Pattens and Lyon, (whose contract, "Paper A," he drew,) that the sale from Pena to Hoppe and Hollingsworth must have been about the same time as that from Vaca to plaintiffs' grantors, viz: March, 1847. This theory is further sustained by other facts and circumstances which will appear hereafter.

The deed from Pena to Hoppe and Hollingsworth contains the following description of the land sold by the former to the latter: "All that certain piece or parcel of land being in the

upper end of the first valley east of the residence of Manuel Vaca, and bounded as follows, to wit: commencing at the northwest corner of the lands of John Patten, Sr., John Patten Jr.. and Albert Lyon, and running in a northeast direction with the north line of the said Pattens and Lyon, to the west base of the mountain east of said valley; thence up said valley, parallel with the base of said mountains, a sufficient distance to include half a league of land, Spanish measure; also, running from the place of beginning with the base of the mountains west of said valley in a northerly direction, so that the north line of said half league of land will run parallel across the valley with the south line."

The parol testimony upon the question of partition is slightly conflicting. Nathan Coombs, one of the subscribing witnesses to "Paper A," who was called upon for that purpose, and acted as interpreter between the Pattens and Lyon on the one side and Vaca on the other, at the time the contract of sale was made, testified that Pena was present at the sale, and that he (Pena) and Vaca stated at that time, either to him or in his presence, "that they had an agreement between themselves that this half league of land," (referring to the land sold to the Pattens and Lyon) "should be sold by Vaca as a part of his interest in the rancho, and that Pena should have the right to select another half league in place of it, or to make their interests equal they should do this." Pena, who was also examined as a witness, testified that there was no such agreement between him and Vaca as stated by Coombs; but he admits that he was present at the sale, and knew of it, and made no objection to it; and further states that he sold to Hoppe and Hollingsworth, and Vaca sold to the Pattens and Lyon, and that they both had the right to sell.

The latter part of Pena's testimony can hardly be reconciled with the former, for it is difficult to perceive how either could have the right to sell the estate of both in a particular half league of land unless there was some agreement between them to that effect. Moreover, the testimony of Pena is con-

tradictory in other particulars, and it is evident that it is enti-
tled to but little weight.

It further clearly appears from the testimony that Vaca and
Pena both sold their respective half leagues for the same pur-
pose, viz : to procure means and labor to repair and improve
their dwelling houses; and-that the entire consideration paid
by the Pattens and Lyon was paid to and received by Vaca,
to his separate use, and that paid by Hoppe and Hollingsworth
was in like manner paid to and received by Pena, all of which
is admitted by Pena on the witness stand.

It further appears that, immediately after the sale, the Pat-
tens and Lyon were put into formal possession by Vaca, and
that the Pattens soon after built a house on the lower and
Lyon on the upper end of the tract, and that both subse-
quently farmed and cultivated a small portion thereof, respec-
tively contiguous to their dwellings, and kept more or less
stock running over the land; that they, and others under them,
have been in possession since. It also appears that Hoppe
and Hollingsworth were in possession of their half league in
1847, and so far as anything appears to the contrary, they or
others under them have since continued in possession.

Thus it appears that the two half leagues were sold by
Vaca and Pena, respectively, at about the same time and for
their separate use; that their respective grantees went into
the several possession of their respective tracts under deeds,
the calls of which are unambiguous and certain, and readily
followed; that neither signed the other's deed, but each con-
veyed the land as though held by him in severalty, and each
did this with the full knowledge of the other. The two tracts
are contiguous, and constitute but one body of land, and
embrace, apparently, all the land contained in the valley.
The lower end is sold by Vaca and the upper by Pena. All
this could not have happened by accident; but, on the con-
trary, it is manifest that these several acts were the result of
design, and were performed by the respective actors in pur-
suance of an agreement between them of the character of that
testified to by Coombs. That agreement, followed by the acts

detailed above, fully satisfies all the requirements of either the Mexican or common law upon the subject of the parol partition of real estate, and establishes beyond a doubt, in our judgment, that a parol partition of the land in question was made as claimed by the plaintiffs in this suit. The execution of their respective deeds, with the calls therein contained, by Vaca and Pena, was a full ratification of their agreement, and a sufficient division and segregation of the land in question to terminate a common and create a several possession, which was kept up and continued by their respective grantees. We have examined the instructions of the Court to the jury upon the question of partition, and have been unable to find any error in them; on the contrary, we think the question was fairly submitted.

It is next contended by counsel for the defendant that inasmuch as defendant's deed was first recorded, he is a subsequent purchaser in good faith and for a valuable consideration, and that as against him the plaintiffs' title, although prior in point of time, must fail. In order to avail himself of this defense, the defendant's and plaintiffs' grantor must be the same, which circumstance seems to have been entirely overlooked by counsel. The defendant has no conveyance from Vaca, the original grantor of plaintiffs, nor from their immediate grantors, the Pattens and Lyon. The defendant's subsequent title is derived from Pena alone, who, the partition being established, had no interest whatever in the land. Had the defendant, however, shown a deed from Vaca, recorded before that of the plaintiffs, he would have failed in making out this defense; for, aside from the recitals contained in his deed, he offered no evidence showing himself a subsequent purchaser in good faith and for a valuable consideration. The burden of proving this rested upon him, and the recitals of the deed are not, as he contends, *prima facie* proof of a valuable consideration. Such recitals are but the declarations of the grantor, and it has never been held that the declarations of a vendor or assignor, made after the sale or assignment, can be received to defeat the title of the vendee or assignee. A party seeking

to bring himself within the statute cannot rely upon the recitals of his deed, but must prove the payment of the purchase money *aliunde*.

The judgment is affirmed.

Mr. Justice RHODES expressed no opinion.