David v. Rickabaugh.

---

## DAVID v. RICKABAUGH *et al.*

Registry laws; PUBLIC LANDS. It seems that the registration laws of the State do not apply to the disposition of lands belonging to the United States, and that the rights of parties will be governed by the regulations established by congress, until the title has finally passed from the government.

*Appeal from Mills District Court.*

FRIDAY, DECEMBER 8.

THE petition states that in 1854 the plaintiff and the banking firm of Green, Thomas & Co., of Burlington, Iowa, jointly employed W. L. Hamilton to select and enter, for them and on their account, western lands of the United States, furnishing him with the necessary funds

and land warrants; that on the 20th day of October, 1854, said Hamilton, with the funds thus furnished to him, entered at the Council Bluffs' land office, three of the forty acre tracts of the land in controversy in his own name; and some time thereafter entered the other forty in the same manner, paying for the same with the funds thus furnished; that the certificates of such entries were assigned by Hamilton before patents were issued thereon to Edward H. Thomas, one of the partners in the firm of Green, Thomas & Co., which assignments were duly acknowledged before the register of the land office; that on August 23, 1858, upon a settlement and division between the plaintiff and Green, Thomas & Co., said E. H. Thomas conveyed to the plaintiff, among other lands, these four forty acre tracts by quitclaim deed, which was duly acknowledged and recorded; that the plaintiff has ever since paid the taxes and exercised complete ownership over the same; that by some accident the patents for three of the forties were not issued in the name of Thomas as they should have been, but in the name of said Hamilton, that for the other forty being correctly issued in the name of E. H. Thomas, assignee.

The petition further states that in September, 1867, Hamilton and Rickabaugh conspiring together to defraud the plaintiff, the said Hamilton pretending to be the owner of said lands, conveyed the same by deed of general warranty to Rickabaugh, and that the latter had actual knowledge of plaintiff's ownership.

Issue being joined, the cause was referred upon the pleadings, exhibits and depositions, and the report of the referee is to the effect that all the averments of the petition are true, except that Rickabaugh had not sufficient actual notice of plaintiff's title to be put upon inquiry.

His conclusions of law are:

1. That plaintiff is entitled to a decree quieting the title

in him to the forty, the patent for which was issued in the name of E. H. Thomas.

2. To a judgment for the amount of the unpaid purchase-money due from Rickabaugh on his purchase from Hamilton.

3. That Rickabaugh is entitled to a decree for the other three forties, patented in the name of Hamilton.

4. That the costs should be apportioned among the parties.

Exceptions were filed by both parties, which were overruled by the court, and a decree entered in accordance with the referee's report.   Plaintiff appeals.

*Watkins & Williams* and *Halls & Baldwin* for the appellant.

*D. H. Solomon* for the appellees.

MILLER, J. — I. In addition to the facts found by the referee, the evidence shows that the patents were never delivered to Hamilton, but remained in the possession of the United States until they were delivered to the plaintiff, in 1865, upon the surrender, by him, of the certificates of entry, and have remained in his possession ever since.

As to the correctness of the first part of the decree, quieting the title in plaintiff to the forty acre tract, patented in the name of E. H. Thomas, and conveyed by him to the plaintiff, which conveyance was duly recorded prior to Rickabaugh's purchase from Hamilton, there can be no question, nor is any question made thereon, as the defendants do not appeal therefrom.

II. The appellee bases his right and title upon the following facts:   1. By the copies of original entries filed in the office of the recorder of deeds, it appeared that W. L. Hamilton, his grantor, was the original purchaser, from

the United States, of the land in controversy. 2. That there was no conveyance of the land from Hamilton of record. 3. That appellee had no actual notice of plaintiff's title or claims to the land.

The rights of the parties must be determined in the main by the laws of the United States. While the State has an undoubted right to legislate as she may please in regard to the remedies to be prosecuted in her courts, and to regulate the disposition of property of her citizens, by descent, devise or alienation, yet in respect to the public domain of the United States, of which the land in dispute was a part, congress is invested, by the Federal constitution, with the power of disposing of and making all needful rules and regulations respecting it. *Wilcox* v. *Jackson*, 13 Pet. 498 ; *Irvine* v. *Marshall*, 20 How. 553. So that, in respect to the disposition of the public lands, we must be governed by the regulations established by congress touching the same, until the title has finally passed from the government, and until conveyed by its grantee.

We find that, under these regulations, " when an individual applies to purchase a tract of land, he is required to file an application in writing therefor ; on such application the register (of the land office) indorses his certificate, showing that the land is vacant and subject to entry, which certificate the applicant carries to the receiver, and is evidence on which the receiver permits payment to be made, and issues his receipt therefor. The duplicate of this is handed to the purchaser, as evidence of payment, and which should be surrendered when a patent, forwarded from the general land office, is delivered to him. The other receipt is handed to the register, who must immediately indicate the sale on his township plat, and enter the same on his tract book, and is transmitted to the general land office, with the monthly abstract of sales and certificate of purchases." See circular of instructions by general land office issued in 1831. The entry of lands

with military land warrants is required to be made by application to the register alone, who issues certificates of purchase made according to forms furnished by the general land office, one of which is delivered to the purchaser and another is retained to be sent to the commissioner. See *Bell* v. *Hearne*, 19 How. 260.

By act of congress of March 22, 1852, the certificates of locations of military land warrants were made assignable, subject to regulations and forms prescribed by the commissioner of the general land office, and when assigned the patent issued to the assignee.

In this case the land was entered with military land warrants, by Hamilton, who was a mere agent for that purpose. He made the entries, however, in his own name, subsequently he assigned the certificates to Thomas. Before doing so he held the mere naked title (such as the certificates could give) in trust for his principals. After assigning the certificates he had no title whatever in the land. The assignee became entitled to patents for the land in his own name, and that they were not so issued, was the result of mistake or omission.

When Thomas became the owner of the land by assignment of the certificates, there was no act of congress or even of this State which required him to record the evidence of his title; nor has there been at any time since any law to that effect.

Thomas therefore could, at any time after thus obtaining all the title vested by the certificates, even before the issuance of patents, have conveyed the land by deed, as he did, to David. *Cavender* v. *Smith*, 5 Iowa, 189; *Arnold* v. *Grimes*, 2 id. 1; see, also, 2 Washb. on Real Property, 544, 545, and cases cited in notes 1 and 2.

The deed from Thomas to the plaintiff vested in the latter the title, to the same extent that it could have been held under the certificates of entry by an original enterer. Up to the time of the conveyance by Thomas to David no

question of notice under the recording laws of the State was involved.    See *Arnold* v. *Grimes*, 2 Iowa, 19; *Heirs of Klein* v. *Argenbright*, 26 id. 497, which support the principle here enunciated.

The deed from Thomas to the plaintiff was duly recorded prior to Rickabaugh's purchase from Hamilton.    The plaintiff complied with the recording laws at once when those laws became applicable and affected his rights.    No record of any transfer of the ownership of the land, prior to the execution and delivery of the deed to plaintiff, was necessary to protect his rights.    No law required him to record the certificates of entry and Hamilton's assignments thereof.    The recording of his deed from Thomas was constructive notice to Rickabaugh that the plaintiff claimed the land under the deed.    In addition to this, the evidence shows very satisfactorily that the land was commonly reputed in the neighborhood to be that of plaintiff; that Rickabaugh knew this; that he knew that the taxes were regularly paid by plaintiff, and, on one occasion, procured his attorney to apply to plaintiff by letter to purchase the land, prior to his purchase from Hamilton.    Taking all these facts into consideration we unite in holding that the defendant had, at least, sufficient notice to put him upon inquiry in respect to plaintiff's title, and that he cannot be considered a *bona fide* purchaser without notice.    Under these circumstances the defendant was bound to inquire into the source of plaintiff's title, especially as his grantor, Hamilton, could show neither patent nor certificate of entry to any of the land he purported to convey.

The certificates were delivered to the plaintiff at the time of the conveyance to him by Thomas, and, upon the surrender of the certificates by plaintiff, the patents were *delivered* to and have ever since been held by him, and we are of opinion that the issuance of the patents by mistake or accident, in the name of Hamilton, did not, and will not, in equity, change the rights of the parties.    Upon

a proper application and showing of the facts, the commissioner of the general land office would, as he possesses the authority, have canceled the patents and issued others in the name of Thomas, the assignee of the certificates. This has been done in like cases, and has received the sanction of the supreme court of the United States, in *Bell* v. *Hearne et al.*, *supra*, which was a case where a patent had been issued by mistake, and the land was claimed by a purchaser at sheriff's sale on a judgment against the person in whose name the patent issued. Upon application to the commissioner the patent was canceled and another issued in the name of the person properly entitled thereto. CAMPBELL, J., in delivering the opinion of the court, says: "The commissioner of the general land office exercises a general superintendence over the subordinate officers of his department, and is clothed with liberal powers of control, to be exercised for the purposes of justice, and to prevent the consequences of inadvertence, irregularity, mistake and fraud, in the important and extensive operations of that office for the disposal of the public domain. The power exercised in this case is a power to correct a clerical mistake, the existence of which is shown plainly in the record, and is a necessary power in the administration of every department;" and it was accordingly held, that the supreme court of Louisiana erred in conceding *any effect* or *operation* to the patent thus issued by mistake in the name of James Bell, as vesting a title in a person of that name. A court of equity, when all the parties are before it, will do in substance, though not in form, the same that the commissioner would have done. Instead of giving effect to, it will grant relief against, mistakes.

Reversed.