Sillyman v. King.

---

## Sillyman v. King *et al.*

1. **Conveyance: BY HOLDER OF CERTIFICATE.** A conveyance by a purchaser of land from the United States, holding a certificate of entry or location, before a patent is issued, will pass the title to his grantee.

2. —— EFFECT ON SUBSEQUENT PURCHASER. Such purchaser must have his conveyance or evidence of title recorded in order to affect subsequent purchasers without notice.

3. —— ONUS. But in a contest of this kind, the onus is upon the subsequent purchaser, to show that he made his purchase in good faith and for a valuable consideration, paid before notice of the prior conveyance.

*Appeal from Mitchell District Court.*

WEDNESDAY, MARCH 19.

SUIT IN EQUITY TO QUIET TITLE TO REAL ESTATE. Decree for plaintiff. Defendant Dolton appeals. The facts of the case are stated in the opinion.

*Charles A. Clark* for the appellant.

*Shiras, Van Duzee & Henderson* for the appellee.

MILLER, J.—In January, 1856, the defendant, Alfred King, located a large number of military land warrants on lands situated and lying in Mitchell county, Iowa, obtaining from the United States Land Office, at Decorah, the usual certificates showing such locations.

About the 10th day of May, 1856, King sold about one thousand acres of the lands thus located to the plaintiff, John Sillyman, and as evidence of such sale King and wife executed assignments, which were printed and written on the backs of the several certificates of location, in the following form.

"For value received, we, Alfred King, to whom the within certificate of location was issued, and Mary King, his wife, do hereby sell and assign unto John Sillyman and to his heirs and assigns forever, the said certificate of location and the warrant and land therein described, and authorize him to receive the patent therefor.

Witness my hand and seal this 10th day of May, 1856."

"Attest,          (Signed.)          "ALFRED KING."
"H. CRAIG."          .          "MARY KING."

The execution of this assignment was duly acknowledged before a justice of the peace of Erie county, Pennsylvania.

The lands have never been in the actual occupancy of any one. The plaintiff has paid the taxes thereon from the time of his purchase from King down to the present time, and paid King the purchase-money in full, being at the rate of five dollars per acre. Sillyman failed to file the certificates of location assigned to him by King and wife, in the General Land Office, at Washington, prior to the making out of the patents for the land, which was done in 1858. The patents, therefore, were made out in the name of Alfred King, the original locator of the land, but they were never delivered to him.

On or about the 9th day of January, 1869, Sillyman, who resided, and still resides, near Erie, Pennsylvania, applied for patents for the land at the Land Office at Washington. The department having already made patents in the name of King refused to make new patents for the same land to plaintiff, but delivered to him those made out to King, and directed him (Sillyman) to record these patents in connection with the assignments executed on the back of the certificates of location, assuring him that this would make his title to the land perfect on the records of Mitchell county. In pursuance of these instructions, the plaintiff, on the 26th day of January, 1869, filed in the recorder's office, of Mitchell county, for record, the patents and certificates assigned to him by King and wife.

On the 13th day of November, 1868, one A. W. Lancaster procured from King a quitclaim deed for the lands sold by the latter to the plaintiff by the assignment of the certificates before mentioned, together with other lands, in all 2,540 acres, for the recited consideration of $250. This deed was filed for record in Mitchell county on the 21st day of November, 1868.

On the 3d day of December, 1868, Lancaster executed a quitclaim deed for these same lands to the defendant Samuel Dolton. The consideration named in the deed is $2,000.

This deed was filed for record in Mitchell county on the 9th day of December, 1868, just one month before the plaintiff filed his certificates and patents for record.

Upon the plaintiff learning of these deeds being recorded he brought this action to quiet the title to the land, alleging the facts hereinbefore stated, and also that King conveyed, and Lancaster and Dolton each purchased, well knowing that the former had no title or interest in the land at the time he quitclaimed to Lancaster, and that plaintiff was the owner thereof.

The defendants being non-residents of the State, service of notice was made by publication, and at the September term, 1870, of the district court, default was entered and a decree rendered in favor of plaintiff as prayed in his petition.

In pursuance of this decree King and wife executed and delivered a proper deed for the land to Sillyman.

Within the time allowed by law Dolton appeared and moved for a re-trial of the cause, on the ground that he was served by publication only and had made no appearance. This motion was sustained, and Dolton filed his answer denying the allegations of the petition, and averring "that he purchased said lands in plaintiff's bill described, in good faith, and for value and a full and adequate price, and without notice of any equities of said plaintiff, and without notice of any of the matters and things charged in his said bill."

The cause was referred to a referee before whom plaintiff introduced and read in evidence the depositions of himself and Alfred King; also the quitclaim deeds from King to Lancaster, and from the latter to Dolton, and the recorded certificates, etc. The defendant offered no evidence.

The referee found and reported in favor of the plaintiff and the court rendered a judgment confirming the former decree.

The first question presented for decision is, what title or interest did King have in the land in controversy, which he could or did convey by his quitclaim deed to Lancaster? Had King executed to Sillyman a formal deed purporting to convey the land instead of transferring the certificates of location, there would be no doubt that such deed would have vested in the latter the title to the same extent that it was held by King under the certificates of location. *David* v. *Rickabaugh*, 32 Iowa, 540, and cases cited on pp. 544, 545.

That the purchaser of land from the United States may convey the same while he is the holder of a certificate of entry or location prior to the issuing of the patent so as to pass his title in the land to his grantee is well settled. Id. See, also, *Arnold* v. *Grimes*, 2 Iowa, 1, and cases cited; *Cavender* v. *Heirs of Smith*, 5 Iowa, 157.

When land is purchased by an individual from the United States it is no longer the property of the government, but of the purchaser, unless it has been reserved from sale or has been previously sold, and then the entry might be canceled on the ground of mistake. But where there is no such mistake, the holder of the certificate of entry or location, having purchased and paid for the land, is the owner thereof, and, although the naked technical legal title remains in the United States until the patent is issued, yet, in equity, the title is in the purchaser. The holder of the certificate is the owner in the same sense as if he held the patent. The issuance of the patent only perfects the evidence of his ownership. *Carroll* v. *Stafford*, 3 How. (U. S.) 460; *Stoddard* v. *Chambers*, 2 id. 285; *Cavender* v. *Smith*, 3 G. Gr. 349; *Stryker* v. *Polk Co.*, 22 Iowa, 131; 2 Washb. on Real Prop. 544, 545, and cases cited in notes 1 and 2.

By act of congress of March 22, 1852, the certificates of locations of military land warrants were made assignable according to regulations and forms prescribed by the commissioner of the general land office, and when such certificates were assigned in conformity with those forms and regulations, the assignee stood in the same relation to the United States, and held the same right and title under the certificates to the land located, as did the original purchaser — his assignor — prior to such assignment, and the patent would issue directly to the assignee, where the certificates were forwarded before the patents were made out.

When King assigned the certificates of location to the plaintiff, he parted with all of his title and interest in the land, and the latter became the owner thereof as fully as King was prior to the assignment. *David* v. *Rickabaugh*,

*supra.* He became by the assignment invested with the ownership of the land and the right to have the patents issued in his own name.

The result, therefore, is, that the plaintiff occupied substantially the position of a holder of a prior unrecorded deed from King at the time the latter conveyed to Lancaster, and when Lancaster conveyed to Dolton, so that the only questions remaining are, first, whether Lancaster purchased in good faith for value without notice; and, second, if not, is Dolton a purchaser in good faith from Lancaster, without notice of plaintiff's title.

In respect to the purchase of Lancaster from King, it is abundantly proved that he was fully informed by the latter at the time and prior to his purchase that King had no title to the land; that he had long since sold the same and received payment therefor. Not only so, but it is clearly shown that Lancaster procured the quitclaim deed from King with the intent to defraud the plaintiff out of the title to the land. It is not necessary to recapitulate the evidence on this point. It most clearly establishes the fact, and it is not controverted by appellant. So far, therefore, as regards the quitclaim deed from King to Lancaster, the latter took no right or title whatever in the land as against the plaintiff.

This brings us to the question whether the defendant Dolton is a purchaser for a valuable consideration without notice of the plaintiff's title.

The recording statute provides, that "no instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration without notice, unless recorded in the office of the recorder of deeds in the county in which the land lies," as required by other provisions of the statute. Revision, § 2220. This section, while it declares invalid all instruments affecting real estate, as against subsequent purchasers for a valuable consideration without notice, unless recorded, etc., clearly limits such invalidity to the class of purchasers mentioned. In other words, the language used clearly implies that except as to "subsequent purchasers for a valuable consideration, without notice," instruments affecting real

estate are not rendered invalid for the reason that they have not been recorded in the county where the land lies. So that to entitle a subsequent purchaser to priority over a prior purchaser who has failed to record his deed, he must have purchased for a valuable consideration and without notice of the rights of the first purchaser.

The only evidence in respect to the purchase of Dolton from Lancaster is the quitclaim deed to him from the latter, reciting the payment of $2,000 as the consideration for the land purchased. There is no evidence whatever tending to show that this sum or any other sum was in fact paid.

It is clear upon principle and authority that this recital in the deed, of the payment of the purchase-money, is not evidence thereof as against the plaintiff, or any stranger to the deed, who is claiming adversely thereto. Such recital is evidence only as between the parties to the deed and persons claiming through or under them. *Long* v. *Dollarhide*, 24 Cal. 218; *Galland* v. *Jackson*, 26 id. 79, 86; *Noel* v. *Gwyn*, 16 Ala. 725; *Jewett* v. *Palmer*, 7 Johns. Ch. 65; *Story* v. *Windsor*, 2 Atk. 630; *Colton* v. *Seavey*, 22 Cal. 496; *Kimball* v. *Fenner*, 12 N. H. 248.

And it is also well settled that to entitle a subsequent purchaser without notice to protection against a prior title or equity he must have actually paid the consideration before notice.

In the case of *Boone* v. *Childs*, 10 Pet. on p. 211, the supreme court of the United States, after discussing the rights of a subsequent *bona fide* purchaser, says, that in setting up his purchase "by plea or answer, it must state the deed of purchase, the date, the parties, and contents briefly; that the vendor was seized in fee, etc.; the consideration must be stated, with a distinct averment that it was *bona fide* and truly paid, independently of the recital of the deed. Notice must be denied previous, and down to the time of paying the money and delivering the deed * * * ; *the case stated must be made out*" by evidence. In *Norton* v. *Williams*, 9 Iowa, 528, Wright, J., says: "In every instance if there is notice of the

prior conveyance the purchaser is not an innocent one. * * * Not only so but he must purchase *and pay his money before notice*, in order to be protected." This same doctrine is sanctioned in *Barney* v. *McCarty*, 15 id. 510, 514. In *Landers* v. *Bolton*, 26 Cal. 393, 419, the court, in the opinion, say, that " there is no finding or evidence in the record that she (the plaintiff) was a purchaser without notice for a valuable consideration, and until such fact appears the title must be deemed to be in the first grantees of Maria B. Gimmy to whom it passed as against everybody except a subsequent purchaser for a valuable consideration without notice." In *Wormley* v. *Wormley*, 8 Wheat. 421, STORY, Justice, in delivering the opinion of the court, says : " It is a settled rule in equity, that a purchaser without notice, to be entitled to protection, must not only be so at the time of the contract or conveyance, but at the time of the payment of the money." In *Losey* v. *Simpson*, 3 Stock., it is stated as " settled that actual payment is in general necessary to the character of a *bona fide* purchaser for a valuable consideration."

See also *Thomas* v. *Graham*, Walk. Ch. 118 ; *Jewett* v. *Palmer*, 7 Johns. Ch. 65 ; *Meiner* v. *Willoughby*, 3 Minn. 239 ; *Blanchard* v. *Tyler*, 12 Mich. 339 ; 2 Lead. Cas. in Eq. 1 ; *notes to Basset* v. *Nosworthey.*

It is insisted, however, by the appellant's counsel that since the plaintiff has alleged that Dolton is *not a bona fide* purchaser for value without notice, the burden of proof is on him, and that the defendant was not required to offer evidence in support of his plea that he is a purchaser for value without notice.

Without undertaking to determine on whom would rest the burden of proof, if there was no fraud in the case, we are of opinion that, it being established by the proof that Dolton's grantor obtained his deed with the intent to defraud the plaintiff, it would be carrying the doctrine of presumptions beyond the demands of reason and justice to presume, upon the mere naked deed of such fraudulent grantor, without further evidence, that Dolton was a purchaser for a valuable consideration

without notice. It is true, the general rule is, that the party having the affirmative of the issue has also the burden of proof, but this is not always so, for it is well settled that in an action on a promissory note by an indorsee thereof, where the defense of fraud in its inception is pleaded and shown by evidence, the burden of proof is upon the plaintiff to show that he is a *bona fide* holder for value. *Lane* v. *Krekle*, 22 Iowa on p. 406, and cases there cited.

And the burden of proof is on the plaintiff in such case notwithstanding it is necessary for the defendant, in his answer, to allege that the plaintiff is not a *bona fide* holder for value without notice. Ibid.

The reason and object of this rule is to prevent frauds and impositions on innocent persons. *Hogg* v. *Skeen*, 114 Eng. Com. Law, 426; and it obtains at law as well as in equity. The principle upon which this rule rests would seem to apply with at least equal force to a person claiming to be a subsequent purchaser of real property for a valuable consideration without notice, as to the purchaser of commercial paper; especially when the question arises in a suit in equity. It was accordingly held, in *Bolton* v. *Jackes*, 6 Rob. 166, that a grantee who seeks to shelter himself against the consequences of a fraud committed by his grantor under the *bona fides* of his purchase, is bound to prove the payment of the consideration, as well as other facts which the shape of the case may require; that his title is not derived alone from the conveyance to him, but from that as fortified by the *bona fides* of his purchase.

In *Shotwell* v. *Harrison*, 22 Mich. 410, where the defendant claimed title as a *bona fide* purchaser from the plaintiff's grantor, it was held that the burden of proof was on the defendant to show that he purchased in good faith and for a valuable consideration, and by some other evidence than the recital in his deed. The cases of *Boone* v. *Childs*, *supra*; *Long* v. *Dollarhide*, *supra*, and *Landers* v. *Bolton*, *supra*, hold the same doctrine.

Under our recording act a prior unrecorded deed is invalid

only as against a subsequent purchaser *for a valuable consideration without notice.* It is not the subsequent deed that renders the prior one invalid, but that in connection with the *bona fides* of the purchase. The purchase is *bona fide* only when a valuable consideration has been paid without notice of the prior conveyance. Where all three of these concur—a purchase, payment of a valuable consideration, in the absence of notice—then it is that the subsequent purchaser is entitled to protection against the prior unrecorded deed. It is clear also, on principle, that in a case of fraud committed by his grantor, such subsequent purchaser should be required to establish the *bona fides* of his purchase. If he has paid the purchase-money he can easily show it, whereas it might be impossible for the other party to establish the negative.

This doctrine is in accord with the principles of justice and equity, since it tends to protect innocent parties from the frauds of the cunning and designing, while it secures to all parties their just rights.

In the view we have taken of the case it becomes unnecessary to discuss and decide the other questions which have been fully and ably argued by counsel. The conclusions reached, on the questions discussed in the opinion, are decisive of the case, and result in an affirmance of the judgment below.

Affirmed.