WEARE & ALLISON, Appellants, v. THOMAS WILLIAMS, *et al.*, Appellants, and NEW ENGLAND LOAN AND TRUST CO., *et al.*, Appellees.

1. **Fraudulent Conveyances:** INNOCENT PURCHASER: NOTICE: RIGHTS OF CREDITORS. Where a debtor conveyed certain real estate to a relative in a distant state for the purpose of defrauding a creditor, and afterwards obtaining a power of attorney from such relative to sell, convey and mortgage such property, executed a mortgage thereon on behalf of himself and of said relative to one who received the same in good faith, for a valuable consideration, and without notice of the fraudulent purpose of said conveyance, nor of the inteterest of said creditor, *held*, that the lien of said mortgage was superior to that of a judgment subsequently obtained by the creditor against said debtor.

2. ———: ———: POWER OF ATTORNEY: ESTOPPEL. Conceding that said power of attorney was insufficient to authorize the debtor to make said mortgage, a creditor who based his claim to the property upon the fact of said debtor's ownership would be estopped from setting up such want of power in the debtor to make said mortgage.

3. ———: ———: ———: CONSTRUCTION. A power of attorney to "lease, control, sell, convey and mortgage any and all real estate" the grantor "owns or controls" in a county named, is not an authority to convey property acquired subsequent to the execution of the power. And a conveyance of such property based upon such power will be invalid as against a creditor of the attorney-in-fact, who, at the date of said conveyance, was the equitable owner of said property.

4. ———: ———: ———: PRIORITY OF LIENS. A mortgage executed by an attorney-in-fact solely for his own benefit, of which fact the mortgagee had notice, is a superior lien to a subsequent attachment of the same property against the attorney, who was the equitable owner of said property at the time of the execution of said mortgage.

*Appeal from Plymouth District Court.*—HON. SCOTT M.
LADD, Judge.

WEDNESDAY, MAY 18, 1892.

THIS is an action in equity to set aside certain
deeds and mortgages, and make the plaintiff's judg-
ments a first lien on a lot in the city of Le Mars and on
certain farm lands. For convenience, the city property
will be referred to as "lot," and the farm land as
"farm." The defendants, the New England Loan and
Trust Company and Jennie G. Lounsberry, hold two
mortgages on the farm, given by the defendant Williams
for himself and as attorney-in-fact for the defendants
Morgan. The defendant, the Le Mars National Bank,
holds a mortgage on the "lot," and also on the "farm."
The defendant, L. Delperdang, claims as purchaser of
the "farm," subject to the mortgages thereon of the
Le Mars National Bank, the New England Loan &
Trust Company, and Jennie G. Lounsberry. The other
facts appear in the opinion. The court below found
on the several sums due the plaintiffs and the defend-
ants, the New England Loan & Trust Company, the Le
Mars National Bank, and Jennie G. Lounsberry; set
aside all the deeds made by Williams by himself or as
attorney-in-fact for the Morgans, as against the plain-
tiffs; established the claims of the New England Loan
& Trust Company and Jennie G. Lounsberry as first
liens upon the land, and the mortgage of the Le Mars
National Bank as a first lien upon the lot; and made
the plaintiffs' claim a lien upon the lots, subject to the
lien of the Le Mars National Bank, and on the farm,
subject to the mortgages of the New England Loan &
Trust Company, and Jennie G. Lounsberry; and set
aside the mortgage of Delperdang to the Le Mars
National Bank. All of the parties excepted and appeal,

except the New England Loan & Trust Company and Jennie G. Lounsberry.—*Affirmed*.

*J. S. Lothrop* and *Struble, Rishel & Hart,* for plaintiffs, appellants.

*Argo & McDuffie,* for defendants, appellants.

*Kauffman & Guernsey* and *E. D. Samson,* for appellees, New England Loan & Trust Company and Jennie G. Lounsberry.

KINNE, J.—The following facts are either admitted by the pleadings or upon the trial, or are found by us to be established by the evidence:

*First.* That on January 1, 1881, the defendant Williams executed to the plaintiffs his promissory note for one thousand, three hundred and fifty dollars, maturing December 3, 1881, and drawing ten per cent. interest. *Second.* That prior to the maturity of this note, Williams acquired title in his own name to the following real estate in Plymouth county, Iowa, viz.: The northeast quarter of the southeast quarter and the northeast quarter of the northeast quarter in section five, township 93, range 45; also five feet off the west side of lot three, and fifteen feet off the east side of lot four, of Bennett's subdivision of lots fourteen and fifteen, of block thirteen, in Le Mars, Iowa. *Third.* August 15, 1881, Williams executed a deed to the defendant Hannah Morgan, conveying to her the "lots" above mentioned. *Fourth.* December 22, 1881, the plaintiffs began suit on their note in the circuit court of Woodbury county. *Fifth.* January 9, 1882, venue in said action on motion of the defendant changed to the district court of same county. *Sixth.* March 27, 1882, venue again changed on motion of the defendant to the district court of Cherokee county.

*Seventh.* August 6, 1883, a power of attorney was executed by Hannah Morgan and Lewis Morgan, her husband, to Thomas Williams, the material part of which reads as follows: "That we, Hannah Morgan and Lewis Morgan, of Lawrence county, state of Ohio, have made, constituted, and appointed, and by these presents do make, constitute, and appoint Thomas Williams, of Plymouth county, state of Iowa, our true and lawful attorney for us, and in our name, place, and stead to lease, control, sell, convey, and mortgage any and all real estate I own or control in Plymouth county, Iowa; also to collect rent and receipt therefor for the use of all and any property I have or may have in Plymouth county, Iowa." That the Morgans executed this power of attorney because Williams, who was Hannah Morgan's brother, asked them to do so. *Eighth.* February 26, 1885, Williams executed a deed to his sister, Hannah Morgan, for the "farm" above described. This deed was filed for record by Williams. *Ninth.* That both the deeds mentioned and the power of attorney were duly filed for record and recorded in Plymouth county. *Tenth.* In March, 1885, the suit before mentioned was tried in Cherokee district court, and a judgment rendered against the plaintiffs for costs. The plaintiffs appealed from said judgment to the supreme court. *Eleventh.* June 4, 1885, there were executed to the New England Loan and Trust Company two notes—one for seventy-four dollars and eighty-eight cents and one for one thousand, five hundred dollars—the latter drawing seven per cent. interest per annum. Williams received the money on said notes. Both of these notes were secured by separate mortgages on the "farm" heretofore described, and the notes and mortgages were signed by Williams for himself, and he also signed the names of Hannah and Lewis Morgan, by him, as their attorney-in-fact. Said notes were due in five years from date. Said

notes and mortgages were executed by Williams on the part of said Morgans under and by virtue of the power of attorney heretofore mentioned. *Twelfth.* That the New England Loan & Trust Company acted in good faith in taking said notes and mortgages, and without any knowledge or notice of Williams' fraudulent intent in conveying said lands to Morgan, and in procuring the execution of said power of attorney. *Thirteenth.* In June or July, 1885, the New England Loan & Trust Company assigned the one thousand five hundred dollar note, and the mortgage securing it, to the defendant Lounsberry, before due, and for a valuable consideration. She was a non-resident of the state, and had no knowledge whatever relating to the matter. One Cook made the purchase as her agent, and he had no knowledge of any defects in the title, ·nor of Williams' indebtedness, nor of any fraudulent purpose on the part of Williams or Morgans in executing the mortgage. *Fourteenth.* Some time in 1885, after the sale of the mortgage to the defendent Lounsberry, the plaintiffs perfected their appeal from the judgment of the Cherokee district court to the supreme court. *Fifteenth.* April 27, 1886, Williams, as attorney in fact for Hannah Morgan, executed to the Le Mars National Bank a mortgage on the "lots" to secure the payment of a note for four thousand dollars of that date, signed by him in his own behalf, and by the Morgans by Williams as their attorney-in-fact. Said notes drew ten per cent. interest, and the debt secured was money borrowed by Williams for his own use. That Morgan knew nothing of this transaction, and never · authorized the loan or the execution of the mortgage, unless the power of attorney authorized it. *Sixteenth.* June 19, 1886, the judgment of the Cherokee district court was reversed, and the cause remanded to the district court of Woodbury county for trial. At

the same time the supreme court rendered a judgment against Williams for one hundred and twenty-two dollars and thirty cents costs. *Seventeenth.* November 26, 1886, an execution issued from the supreme court on the judgment last above mentioned, and under it the sheriff of Plymouth county duly levied upon all the real estate heretofore described. *Eighteenth.* After said cause was remanded by the supreme court, and while it was pending in the district court of Woodbury county, the plaintiffs filed an additional petition for an attachment. A writ issued, and was by the sheriff of Plymouth county levied on all the real estate heretofore described.

*Nineteenth.* July 9, 1887, a judgment was rendered in Woodbury district court in favor of the plaintiffs and against Williams for twenty-three hundred and seventeen dollars and eighty-five cents, and one hundred and thirty-three dollars and six cents costs. *Twentieth.* July 22, 1887, an execution and a transcript were issued from Woodbury county on the last mentioned judgment. The transcript was filed in Plymouth county, July 27, 1887, and the execution was levied on all the lands and lots in controversy August 15, 1887. At this time the record title to said lands and lots was in Hannah Morgan. *Twenty-first.* August 30, 1887, Williams, acting as attorney for the defendants Morgan under the power of attorney aforesaid, conveyed to the defendant Lambert Delperdang, by special warranty deed, the "land" heretofore referred to for a stated consideration of forty-one hundred and sixty dollars. That as a part of said consideration, Delperdang assumed to pay the mortgage executed to the New England Loan & Trust Company for fifteen hundred dollars (and which had been assigned to the defendant Lounsberry) with interest accrued and to accrue thereon; and as a further consideration Delperdang executed his promissory note for sixteen hundred

and sixty dollars, due January 1, 1888, with interest at eight per cent. per annum, and one for five hundred dollars, due January 1, 1889, with interest at ten per cent. per annum, both payable to the defendant Hannah Morgan; and to secure the same the defendants Lambert and Margaret Delperdang executed a mortgage upon the "lands" to the defendant Hannah Morgan, but delivered the notes and mortgage to Williams. Said Margaret Delperdang is the wife of Lambert Delperdang. That these notes and the mortgage securing them were before the commencement of the present suit transferred by Williams, acting for himself as well as for the Morgans, to the Le Mars National Bank, to secure to it the payment of the balance due on the forty hundred dollar note heretofore mentioned and also to secure the payment of nine hundred and seventy-five dollars advanced by the bank to Williams. Of the total consideration paid by Delperdang, five hundred dollars was paid in cash to Williams. *Twenty-second.* September 30, 1887, this action was commenced by the plaintiffs. *Twenty-third.* Defendant Williams was insolvent when the present action was begun. *Twenty-fourth.* That both the judgments heretofore set out and recovered by the plaintiffs against Williams are unpaid. *Twenty-fifth.* That all the deeds made by Williams to Hannah Morgan were without consideration, and fraudulent as to the plaintiffs. *Twenty-sixth.* That the notes and mortgage executed and delivered to Willliams by Delperdang were so executed and delivered without the knowledge or consent of Hannah Morgan. That in indorsing said notes and mortgage to the Le Mars National Bank, and in delivering them to said bank to secure his own indebtedness, he acted without the knowledge or consent of said Hannah Morgan. *Twenty-seventh.* That the conveyance of lands by Williams to Delperdang was made after the execution of the power of attorney heretofore

referred· to, and the latter conferred no power upon
Williams to sell the lands or to take notes and mortga-
ges upon said lands to Hannah Morgan, or to indorse
and transfer the notes so taken. *Twenty-eighth.* In
accordance with the prayer of the plaintiff's petition an
injunction issued in this case against Lambert Delper-
dang and the Le Mars National Bank, restraining said
Delperdang from paying anything to any one upon the
notes given by Williams for Hannah Morgan to the
New England Loan & Trust Company; also enjoining
said trust company, the defendant Lounsberry, and the
Le Mars National Bank from collecting or receiving any
sums upon the notes and mortgages held by them, and
from selling, assigning, or transferring or disposing of
said notes and mortgages, and from interfering with the
land in controversy.

I. As to the claims of the New England Loan &
Trust Company and Jennie G. Lounsberry. As the

1. FRAUDULENT
conveyances:
innocent pur-
chaser:
notice: rights
of creditors.

defendant Lounsberry claims through an
assignment from the New England Loan
& Trust Company, we shall consider their
rights together. It must be conceded that
the loan and trust company was a purchaser, nor do we
understand the plaintiffs to controvert this position.
*Stewart v. Marshall*, 4 G. Greene, 75; *Hewitt v. Rankin*,
41 Iowa, 35; *Koon v. Tramel*, 71 Iowa, 137; Jones
Mortgages [2 Ed.], sec. 710. Was it, when it made
the loan and took the mortgages, an innocent
purchaser? No claim is made that the loan and trust
company had any actual knowledge that Williams was
indebted to the plaintiffs, or that his transfer of the
"farm" to Mrs. Morgan was made for the purpose of
defeating or delaying the plaintiffs in the collection of
their debt; but the plaintiffs' contention is that the
company, before it parted with its money, had notice or
knowledge of such facts and circumstances as should
have put it upon inquiry, which inquiry would, if pur-

sued, have led to a knowledge of the facts as to the manner in which Mrs. Morgan acquired title to the land, and of the plaintiffs' rights therein. It may be conceded that the law is that, if the company, before making the loan, was in possession of such facts as would put a reasonably prudent man upon inquiry, it would be held to be bound by whatever such inquiry would have disclosed. *English v. Waples*, 13 Iowa, 57; *Allen v. McCalla*, 25 Iowa, 464; *Zuver v. Lyons*, 40 Iowa, 510; *Jones v. Bamford*, 21 Iowa, 217; *Wilson v. Miller*, 16 Iowa, 111. And that such notice, if it came to it before it had acted in good faith and parted with its money, would charge it with actual knowledge of all it could have ascertained by such inquiry. *Sillyman v. King*, 36 Iowa, 207; *Kitteridge v. Chapman*, Id. 348; *Norton v. Williams*, 9 Iowa, 528. It is impossible to lay down an inflexible rule as to what would be sufficient in all cases to charge one with notice of another's rights. Every case must be judged upon its own facts. But it is well settled, in this state at least, that in such cases, to charge one with what in law will amount to notice, the proof must be *clear and decisive*. As is well said in *Wilson v. Miller*, 16 Iowa, 111: "Vague rumors and indeterminate suspicions will not answer; nor will general assertions, made by strangers to the title, and resting on hearsay, be sufficient. The facts must be such as to bind the conscience of the party, to alarm him, and put him upon such inquiry as, if prosecuted, would lead him to a knowledge of those rights with which it is proposed to affect him." Without referring in detail to the evidence, we may say there is nothing disclosed by it which, to our minds, is sufficient to put these defendants upon inquiry and investigation, when tested by the rules long established by this court.

Again, the law requires notice of the plaintiffs' rights to be brought home to these defendants. What rights did the plaintiffs have at the time the company

took its mortgage? The plaintiffs had as yet recovered no judgment; in fact, judgment had been rendered against them, nor had they as yet prosecuted an appeal therefrom. The plaintiffs' action was in a county other than that in which the "farm" was situated. It never had been pending in Plymouth county. It was a simple action at law, not aided by attachment. Clearly, then, at this time, as against these defendants, the plaintiffs had no other or better right than they would have had as against one who at that time, in good faith, and for a valuable consideration, had made an outright purchase of the farm. Such a purchaser would have been protected as against the plaintiffs, even though he knew of the plaintiffs' claim, if he did not in fact participate in any fraudulent intent which the seller might have had in making the transfer as against the plaintiffs. Hence, it seems to us that, at the time the mortgage was given, the plaintiffs had no rights in this "farm" of which the company could, under the circumstances, have been charged with notice.

II. There are several reasons, in addition to that already given, why we conclude that the defendant's claim is good as against the plaintiffs. We need refer to but one. Suppose it be conceded that the power of attorney was insufficient to authorize Williams to make the mortgage to the company. Williams could not be heard to make that defense as against these mortgages. Are the plaintiffs in any better situation with reference thereto than is Williams himself? We think not. The plaintiffs have no right whatever in the "farm," except as it is claimed by or through Williams. They base their claim on the fact of Williams' ownership. They are in privity with him, and are estopped from setting up the want of power in Williams to make the mortgages. *Lee v. Getty,* 26 Ill. 76; *Lessee of Kinsman v. Wood,* 11 Ohio, 478. See *Hurley v. Osler,* 44 Iowa, 642.

2. ——: ——: power of attorney: estoppel.

III.   Was the power of attorney effective to convey real estate acquired after its execution? It will be

**3. —: —: —: construction.** observed that it reads, "control, sell, convey and mortgage any and all real estate I own or control in Plymouth county, Iowa." It is contended by the plaintiffs that under this power of attorney only such land could be mortgaged as was owned by Mrs. Morgan at the time it was executed. In *Bigelow v. Livingston*, 28 Minn. 57, 9 N. W. Rep. 31, the words used were "to sell, grant and convey all and any lands which I may own in St. Paul," and it was held the power covered all lands owned by the grantor when the instrument was executed; also all lands afterwards acquired and owned by him before a revocation of the power of attorney. In the same case it was held that "all mortgages which I may have and hold" embraced those held at any time before the instrument was revoked; and, under a power of attorney reading "to sign my name to all conveyances of real estate to which I have any right of dower," it was held that it covered such interest in after-acquired real estate. *Benschoter v. Lalk*, 24 Neb. 251, 38 N. W. Rep. 746. See, also, *Fay v. Fitch*, 4 Metc. (Mass.) 513. But in some of these cases it will be observed that the wording is different from that used in the instrument under consideration. The words "I own" mean present possession or ownership, as distinguished from that which is to be acquired in the future. The words set out in some of the cases referred to may well be held to cover property after acquired. Again, in the power of attorney in suit there is a clause referring to renting property, in which the words used are, "of all property I have or may have in Plymouth county, Iowa." It seems to us that the latter clause is an aid in determining the scope and extent of the meaning of the former; and, if the grantor had intended to authorize the mortgaging of property she might afterwards acquire she

would have said so in unmistakable terms, inasmuch as she does expressly authorize the collection of rents from after-acquired property. While the question is not entirely free from doubt, yet we think the grantor intended by the language used to limit the power to mortgage to real estate she then owned.

Jennie G. Lounsberry took the fifteen hundred dollar note and mortgage from the New England Loan and Trust Company in good faith, before maturity, and for a valuable consideration. There was no fact or circumstance shown whereby she, or her agent, who made the purchase, was put upon inquiry as to any rights of the plaintiffs, or as to the defects, if any, in the power of attorney, or as to the fact that the deed from Williams to Mrs. Morgan was without consideration and fraudulent.

Of the claim of Delperdang. The power of attorney was executed to Williams August 6, 1883. The "farm" was deeded to Mrs. Morgan February 25, 1885. The deed, by virtue of the power of attorney, of the "farm" to Delperdang was made August 30, 1887. Under our holding that after-acquired property was not intended to be covered by the words used in the power of attorney, this deed must be held void as against the plaintiffs, and the mortgage and notes taken from Delperdang to secure the deferred payments are also void as against the plaintiffs, and are not available to or enforceable by the Le Mars National Bank.

It seems to us that this result would to a certain extent have followed even if we had found that Williams had the power to execute the deed by virtue of the power of attorney. In no event had he power to sell on a partial credit, or to take notes, nor to indorse and transfer them to the bank. The plaintiffs' attachments were levied on the "farm," and the levies noted on the incumbrance book before Delperdang purchased, and these levies were noted on an abstract

of title which he had.   It is true that, as the "farm"
was at that time owned by Mrs. Morgan, as shown by
the record, such levies would not be even constructive
notice to Delperdang of the plaintiffs' claim.  *Bridgman
v. McKissick*, 15 Iowa, 268; *Farmer's National Bank
v. Fletcher*, 44 Iowa, 252; *Bailey v. McGregor*, 46
Iowa, 667.   It is also a fact that Delperdang had no
actual knowledge of the plaintiffs' claim, or of the
fraudulent conveyance by Williams to Morgan; yet,
in view of all the evidence, we are satisfied that he was
in possession of such knowledge as to put him upon
inquiry, which, if followed up, would have led to actual
knowledge of said claim and of the fraudulent character
of the conveyance mentioned.

IV.  As to the claim of the Le Mars National Bank.
The "lot" in the city of Le Mars was conveyed to
Mrs. Morgan by Williams prior to the
execution of the power of attorney by
Hannah Morgan and husband to Williams;
hence there can be no question of Williams' power to
mortgage the lot to the bank.   The mortgage was
given prior to the attachments of the plaintiff.   The
bank took the mortgage to secure money loaned to
Williams.   It is contended that the bank cannot be a
creditor, because its debt was all contracted after the
fraudulent conveyance of the "lot" was made by
Williams to Hannah Morgan.   So far as the result of
this case is concerned, it is quite immaterial, we think,
whether it is regarded as a creditor or a purchaser.   If
the latter, there is nothing in the testimony which
shows it had any knowledge of the plaintiffs' claims
against Williams, nor that its officers were possessed of
any information by reason of which they were put
upon inquiry as to the same, or as to the fraudulent
character of the conveyance of Williams to Mrs.
Morgan.   The court below properly found for the
bank, and gave it a first lien on the "lot."

4. —: —: —:
priority of
liens.

It is further contended by the plaintiffs that the bank had knowledge that the mortgage was made solely for the benefit of Williams. Suppose that was a fact, could the plaintiffs be heard to complain because Mrs. Morgan's property was being applied to the payment of Williams' debts? Mrs. Morgan is not objecting. The plaintiffs did not even have a judgment at the time this mortgage was made. They were simply creditors of Williams, having no lien whatever upon the "lot." So long as the bank acted in good faith, and we find it did, we do not see how the plaintiffs can question the acts of Mrs. Morgan's agent in applying the proceeds of the mortgage. The agent was accountable only to his principal, or those in privity with her. Surely it will not be claimed that the plaintiffs were in privity with Hannah Morgan.

V. Under another branch of this case we have said that the plaintiffs were estopped from setting up a claim as against the mortgage of the New England Loan & Trust Company, inasmuch as the plaintiffs claim through Williams, and as the latter could not be heard to contest the claims of the company, and the same rule is applicable as against the bank.

Many other questions are raised and ably argued, but the length of this opinion precludes their consideration. On an examination of the whole record we are content with the judgment of the court below, and it will be AFFIRMED.